**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, a labor organization, and Harold E. Burke, as Trustee of Local Union 705, Truck Drivers, Oil Drivers, Filling Station and Platform Workers, Chicago, Illinois, affiliated with the International Brotherhood of Teamsters, Plaintiffs,**

v.

**LOCAL UNION 705, Truck Drivers, Oil Drivers, Filling Station and Platform Workers, Chicago, Illinois, affiliated with the International Brotherhood of Teamsters, Defendant.**

No. 93 C 3600.

United States District Court,
N.D. Illinois, E.D.

July 19, 1993.

Thomas Edward Johnson, Leslie Ann Jones, Johnson, Schaaf, Jones & Snelling, Chicago, IL, Peggy A. Hillman, Indianapolis, IN, Earl V. Brown, Jr., Washington, DC, for plaintiffs.

David J. Mathews, William A. Widmer, III, Adrianne Edith Hampo, Carmell, Charone, Widmer, Mathews & Moss, Chicago, IL, for defendant.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of plaintiffs International Brotherhood of Teamsters ("Teamsters") and Harold E. Burke ("Burke") for a preliminary injunction. For reasons stated below, the motion is granted.

### FACTS

On June 15, 1993, Teamsters general president Ron Carey ("Carey") imposed a temporary emergency trusteeship over the affairs of defendant Local 705, Truck Drivers, Oil Drivers, Filling Station and Platform Workers ("Local 705"), pursuant to Article VI, § 5 of the Teamsters' constitution. The Teamsters intended that the trustee take charge of the affairs of Local 705, a Teamster affiliate. The Teamsters' constitution provides for emergency trusteeships in cases of financial malpractice. Pursuant to the constitution, "where, in the judgment of the General President, an emergency situation exists within the Local Union," a temporary trustee may be appointed prior to any hearing, so long as a hearing is commenced within thirty days of the imposition of the trusteeship. This hearing must be conducted before neutral adjudicators; specifically, the Teamsters' general president is to designate a panel of members who are not involved in the transactions to serve at the hearing. A hearing to ratify the emergency trusteeship concerning the present allegations is set for July 21, 1993.

Carey imposed the emergency trustee in response to an investigation of Local 705 that was conducted by the Independent Review Board ("IRB"), an investigatory body established pursuant to a civil RICO consent decree which settled the government's civil

RICO action against the Teamsters. *See, e.g., United States v. International Brotherhood of Teamsters,* 803 F.Supp. 761 (S.D.N.Y.1992). This investigatory body is charged to act in conjunction with the Teamsters' constitutional disciplinary process to assist in discovering and eradicating corrupt activities within the Teamsters' local unions. The IRB is empowered to conduct investigations and then make recommendations to the Teamsters. According to the rules of the IRB, the Teamsters must respond within thirty days to the IRB's recommendations either by taking action against a local union, or by informing the IRB of its proposed action. The IRB is to monitor the matters it refers to the Teamsters for action, and if the matter has not been pursued adequately or promptly in the judgment of the IRB, the IRB, after providing notice, can itself convene a hearing to resolve the matter.

The IRB's investigation of Local Union 705 resulted in recommended charges of financial malpractice against six officers of the executive board of Local 705. The IRB detailed evidence of continuing financial wrongdoing at Local 705, whose officials were "treating the union treasury like a piggy bank." On May 25, 1993, the IRB recommended to general president Carey that he place Local 705 in trusteeship. This task would require the trustee to look into the charges of the IRB and to retain accountants to study the local union's books. The trustee would also have the plenary authority to hire, fire, and spend money. Further, the constitution requires Local 705 to turn over assets and books to the trustee. Although some of the individuals specifically mentioned in the IRB report are no longer with Local 705, the people currently in control of Local 705 were on the executive board during the alleged financial mismanagement and permitted or authorized the various acts of mismanagement. The Teamsters thus emphasize that the IRB's charges do go to the current executive board and its management of Local 705.

When the trustee, Burke, arrived at the offices of Local 705 along with general president Carey, Local 705 resisted. Due to the resistance, the Teamsters and Burke filed a verified complaint to enforce the emergency trusteeship. On June 16, 1993 the court issued a temporary restraining order. This order required Local 705 to deliver funds, books, and records to trustee Burke in accordance with the Teamsters' constitution. The order further prevented Local 705's officers and agents from representing themselves as the authorized officers or representatives of Local 705, prevented Local 705 from interfering with the conduct of the emergency trusteeship, required Local 705 to provide a complete accounting of its financial condition to Burke, prevented Local 705 from destroying or removing financial records, and prevented Local 705 from otherwise resisting the emergency trustee. The temporary restraining order was extended for an additional ten days to provide the parties with time to prepare for the preliminary injunction motion. The court finds that, because the present issues do not turn on credibility determinations, there is no need for an evidentiary hearing and that the submissions of the parties provide an ample basis for deciding the motion.

## DISCUSSION

In order to grant a preliminary injunction, the court must find: (1) the plaintiffs have at least a reasonable likelihood of success on the merits; (2) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (3) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; and (4) the granting of a preliminary injunction will not disserve the public interest. *Adams v. Attorney Registration and Disciplinary Comm'n of Supreme Court,* 801 F.2d 968, 971 (7th Cir.1986) (citing *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Prods., Inc.,* 545 F.2d 1096, 1097 (7th Cir.1976)); *see also Roland Mach. Co. v. Dresser Indus.,* 749 F.2d 380, 386–89 (7th Cir.1984). The plaintiffs have the burden of proving each of these factors. *Roland v. Air Line Employees Ass'n, Int'l,* 753 F.2d 1385, 1392 (7th Cir. 1985). The ultimate decision in weighing and balancing these factors requires a high degree of discretion on the part of the district judge. *Adams,* 801 F.2d at 971. The plaintiffs have met their burden in this case.

The posture of this case differs little from its posture during the hearing on the temporary restraining order. Local 705 first argues that it can show that there are explanations for the alleged misconduct and therefore there is no need for an emergency trustee. The merits of the charges of financial mismanagement against the officers and executive board of Local 705 will be determined in internal proceedings within the Teamsters union, with a final determination by the hearing panel. Local 705 disputes in this court the alleged mismanagement and asserts that it can explain the incidents. But the proper venue for that course of action lies in the internal union hearing that is to review the decision of president Carey to impose an emergency trustee. The court's task presently is to determine whether there was a basis for the temporary emergency trustee.

Secondly, Local 705 argues there is no emergency situation requiring an emergency trustee and thus Carey's establishment of the emergency trustee was improper. The emergency trusteeship was imposed under the authority of the Teamsters' constitution and based on general president Carey's determination that such action was necessary to ensure that Local 705 operates in a fiduciary manner in compliance with the Teamsters' constitution. Federal law only requires that the administration of trusteeships be conducted in accordance with the constitution and bylaws of the labor organization and for the purpose of correcting corruption. *See Roland v. Air Line Employees,* 753 F.2d 1385, 1390–91 (7th Cir.1985) (quoting the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 462, 464(c)); *International Union, Allied Indus. Workers v. Local Union No. 589, Allied Indus. Workers,* 693 F.2d 666, 675 (7th Cir.1982) (same). There is a reasonable showing on the record that Carey followed the Teamsters' constitution and that the purpose was to correct corruption. Carey's action was taken in direct response to the extensive IRB findings, with extensive details of Local 705 officials' misuse of Teamster funds and property, and to IRB's recommendation that Carey place Local 705 in trusteeship. Additionally, the United States District Court for the Southern District of New York upheld sanctions against Local 705's former principal officer, Daniel Ligurotis ("Ligurotis"), for extensive financial wrongdoing, and specifically found that Local 705's executive board ratified Ligurotis' past misconduct. *See United States v. International Brotherhood of Teamsters,* 814 F.Supp. 1165, 1177, 1178, 1181 (S.D.N.Y. 1993). The IRB report also detailed that Local 705's executive board engaged in financial malpractice. Among other things, the IRB reported that the executive board approved expenditures of discretionary funds to Ligurotis, knowing Ligurotis had embezzled in excess of $75,000 from Local 705's treasury. Further, the IRB indicated that discretionary severance payments which total over $191,000 were improperly distributed to former employees, at least three of whom were alleged to be involved in misconduct.

The IRB report and the IRB rules requiring prompt action furnish the basis for Carey's judgment and the emergency trustee. *See Roland v. Air Line Employees,* 753 F.2d at 1394 (as long as president reasonably believes an emergency of sufficient importance exists, he is entitled to impose trusteeships). Notwithstanding Local 705's argument that the presumption of validity of a trusteeship established by a labor organization does not arise until after the trusteeship has been authorized or ratified in conjunction with a fair hearing, *see* 29 U.S.C. § 464(c), the court possesses authority to impose an injunction prior to the union hearing and gives the general president's decision to create an emergency trusteeship deferential review. *See id.,* at 1394–95, 1396; *see also Teamsters Local Union No. 406 v. Crane,* 848 F.2d 709, 713–14 (6th Cir.1988).

Last, Local 705 asserts that Carey's motivation for imposition of the trustee was for personal, political reasons and thus the trusteeship is improper. Local 705 has not made a showing of bad faith or improper motivation. This showing must normally be made by clear and convincing evidence if a hearing has been conducted. 29 U.S.C. § 464(c); *International Brotherhood of Boilermakers v. Local Lodge D238,* 865 F.2d 1228, 1236 (11th Cir.1989). Nonetheless, on the present record, Local 705 has failed to present sufficient evidence to raise any presumption of bad

faith. General president Carey did not just pull the allegations of mismanagement out of the air. His actions were taken in direct reaction to the IRB's investigation. Carey's reasons are set forth in a notice to the officers and members of Local 705 dated June 15, 1993. Local 705 has failed to produce any material evidence to rebut the evidence showing proper purpose. Additionally, Local 705 admits that a loan was made and that severance payments were made. Again, its explanations can be presented at the internal hearing. Furthermore, even if general president Carey had a personal motivation, objectively viewed, Carey acted under a very clear-cut provision of the constitution which binds both the Teamsters and Local 705. There is substantial evidence to support his decision and there was a good amount of pressure exerted on Carey by the IRB to act quickly. There is nothing objectively arbitrary in his action. Accordingly, the court finds that the plaintiffs have demonstrated a likelihood of success on the merits.

The court further finds that there is no adequate remedy available at law, and to permit the present executive board to remain in control of Local 705 and to thwart the efforts of the emergency trustee would create an irreparable injury to the Teamsters. The harm to the Teamsters exists in that its local affiliate is operating under allegations of serious financial wrongdoing. The reputation of the union and its image are at stake. Further, the acquiescent executive board would still be running Local 705 absent the trusteeship. The court also finds that there is a risk that Local 705's officers, who are the subject of the investigation, will return to their uncooperative attitude. Local 705 has demonstrated its willingness to resist the trustee and there is an incentive for the persons subject to the investigation to resist. This resistance is not reasonable. *Cf. National Ass'n of Letter Carriers v. Sombrotto,* 449 F.2d 915, 921 (2d Cir.1971) (there is a strong expectation that disputes regarding union trusteeships will be litigated while the trusteeship is in effect). The public interest in this case also weighs in favor of the Teamsters where the activities of its local union are at stake which threaten Local 705's members' financial interests. The fiduciary na-

ture of the relationship between Local 705 and its members requires the court to take great care in protecting the beneficiaries of this relationship from the alleged destructive actions of the fiduciary. Also, attempts by the Teamsters to correct and prevent financial malpractice which might be occurring in its local unions is a worthy goal that serves to benefit the public.

The court must emphasize that it is not passing judgment on the merits of the underlying claims of financial malpractice, nor is it determining whether or how long the trustee must remain in control of Local 705. The court is enforcing the Teamsters' constitution and preserving the status quo until these matters can be resolved after the internal union hearing. The Teamsters have complied with its constitution, whereas Local 705 has not. Because the final decision, which is to be rendered by the union panel, must be executed within sixty days after the hearing, the preliminary injunction will only run until the final decision is made. *See, e.g., Merrill Lynch v. Salvano,* 999 F.2d 211, 214, 215–16 (7th Cir.1993) (district courts may issue preliminary injunctive relief in disputes ultimately to be resolved by arbitration, but must be careful in extending the injunction after arbitration proceeds).

### CONCLUSION

For the foregoing reasons, the court grants the preliminary injunction.

IT IS SO ORDERED.