**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

No. 88 Civ. 4486 (DNE).[1]

United States District Court,
S.D. New York.

Aug. 29, 1996.

1. Although the case which is the subject of the instant Opinion and Order is a related case to *United States v. International Bhd. of Teamsters,* 88 Civ. 4486, it is a separate case and should be

assigned a separate docket number. However, because the case before the Court is in the process of being transferred to this Court from the United States District Court for the Northern

---

## OPINION & ORDER

EDELSTEIN, District Judge:

### BACKGROUND

This opinion emanates from the voluntary settlement of an action commenced by plain-

District of Illinois, Eastern Division, to this Court, the Clerk of the United States District Court for the Southern District of New York has not had an opportunity to assign a docket num- ber to this case. Accordingly, the instant Opinion and Order is being docketed under *United States v. International Bhd. of Teamsters*, 88 Civ. 4486.

tiff United States of America ("the Government") against, *inter alia*, defendant International Brotherhood of Teamsters ("the IBT" or "the Union") and the IBT's General Executive Board. The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator ("IA") to oversee the Consent Decree's provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for IBT International Union Office. In the second phase of the Consent Decree, the IA was replaced by a three-member Independent Review Board ("IRB").

During its more than seven-year history, the Consent Decree has spawned a tremendous amount of litigation that has required this Court to issue numerous opinions. In one of those opinions, pursuant to this Court's authority under the All Writs Act, 28 U.S.C. § 1651(a), this Court enjoined "all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]" December 15, 1989, Order at 3; *see also United States v. International Bhd. of Teamsters [All Writs Act Decision]*, 728 F.Supp. 1032 (S.D.N.Y.), *modification denied*, 735 F.Supp. 502 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir.1990). In an Opinion and Order dated August 26, 1996, this Court found that the action *Inter-*

*national Bhd. of Teamsters v. Local Union 714 of the International Bhd. of Teamsters*, 96 Civ. 4903 (N.D.Ill.) ("the Local 714 Case"), implicates the Consent Decree. Amended Opinion & Order, *United States v. International Bhd. of Teamsters, et al.*, 88 Civ. 4486 at 10 (Aug. 26, 1996). In an August 23, 1996, telephone conference between Chambers and the Honorable Wayne R. Andersen ("Judge Andersen")—who was the judge hearing the Local 714 Case—it was agreed that the Local 714 case should be litigated in this Court. Accordingly, this Court enjoined defendant from pursuing the Local 714 Case in any forum other than this Court, and this Court ordered that the Local 714 case be transferred to this Court. *Id.* at 10.

The Local 714 Case concerns a dispute regarding an emergency trusteeship that IBT General President Ron Carey ("Carey") imposed on IBT Local 714, which is located in Chicago, Illinois. Plaintiffs [2] are the IBT and John Metz ("Metz") as trustee to IBT Local 714. Defendant is IBT Local 714.[3] Plaintiffs claim that on August 5, 1996, the IRB "issued an investigative report detailing evidence of wrongdoing at Local 714, and recommending to the General President of the IBT that he place the Local in trusteeship." (Verified Complaint for Enforcement of Emergency Trusteeship ("Complaint") ¶ 14.) The IRB's lengthy investigative report of Local 714 recommends that the IBT impose a trusteeship on Local 714 "because the Local is not being run for the benefit of its members ... [but rather] the Local is being run for the benefit of its principal officer William Hogan, Jr., President James M. Hogan, Recording Secretary Robert Hogan and their family and friends." (IRB Investigative Report ("IRB's Report" or "the Report") at 1 (Aug. 5, 1996).) The IRB's Report alleges widespread nepotism and favoritism within Local 714. *See generally id..* The IRB Report states that "[s]ince at least 1961, Local 714 has not held any contested elections for union office and each member of the current Executive Board was initially appointed to office." *Id.* at 2. The IRB's Report notes that "[t]hree relatives of former

---

**2.** This Court refers to the plaintiffs in the Local 714 Case as "plaintiffs."

**3.** This Court refers to the defendant in the Local 714 Case as "defendant."

principal officer William Hogan, Sr. are Local Executive Board members originally appointed to fill vacancies," and that William Hogan, Sr.'s son-in-law "is a Local business agent." *Id.* The IRB's Report states that "Hogan relatives ... have the contract to clean the Local's offices and have been Local clerical employees." *Id.* The Report further states that "[w]ith respect to the Local's trade show/movie division, ... there are no written procedures governing how individuals may become part of the division or how the members are referred work." *Id.* The Report alleges that William Hogan, Sr. and his relatives operate this division for their own benefit. *See id.* at 3. The Report further contends that officers of the Local have entered into contracts with companies owned by the officers or their relatives, and that officers of the Local have entered into "sham contracts." *See id.* at 4–6.

The IRB forwarded the IRB Report to Carey, and recommended that he impose a trusteeship over the Local. (Complaint ¶ 15.) Plaintiffs claim that "the IRB required of the IBT and its General President a report on actions taken within two (2) weeks, pursuant to the Rules imposed upon the IBT for responding to the IRB reports and recommendations." *Id.* ¶ 15.

Carey imposed a temporary emergency trusteeship over the affairs of Local 714 effective August 8, 1996. (Complaint ¶ 16.) By letter dated, August 8, 1996, President Carey appointed John Metz as Trustee over the affairs of Local 714, pursuant to the powers vested in the General President by Article VI, Section 5 of the IBT Constitution. *Id.* ¶ 16; IBT Const., Art. VI, § 5. On August 8, 1996, President Carey also issued a Notice to the officers and members of Local 714 stating that he was imposing a temporary emergency trusteeship over Local 714 and explaining the reasons for the trusteeship. (Complaint ¶ 17.)

On August 8, 1996, Metz appeared at the address of Local 714 to present his certificate of appointment "and to begin carrying out his duties as Trustee." *Id.* ¶ 17. "In response to the notice of trusteeship, Local 714, its officers, agents and employees, refused to recognize the trusteeship or cooperate with [Metz] and prevented him from carrying out his mandate as Trustee." *Id.* ¶ 19.

Plaintiffs allege that defendant's actions violated the IBT Constitution, Section 301(a) of the LMRA, and Sections 302 and 304 of the LMRDA. *Id.* ¶¶ 24, 26. In order to stop defendant from violating the IBT Constitution and federal labor law, and to prevent defendant from further obstructing the actions of the IBT and its Trustee, plaintiffs sought a Temporary Restraining Order from the United States District Court for the Northern District of Illinois, Eastern Division—the court in which this action originally was filed. On August 9, 1996, Judge Andersen issued a temporary restraining order, ordering:

A. Defendant, their officers, and their successors, agents, assigns, representatives, employees, attorneys and each and every other person acting at the direction of or in concert with them, shall:

1. Deliver all property, funds, books, records and assets of any kind in their possession to JOHN METZ as Trustee and/or his designee(s);

2. Cease and desist from representing themselves as the authorized officers and/or representatives of LOCAL 714, unless so authorized by JOHN METZ, as Trustee and/or his designee(s);

3. Cease and desist from interfering in any manner with the conduct of the temporary emergency trusteeship by JOHN METZ, as Trustee and/or his designee(s);

4. Provide a complete accounting of the financial condition of LOCAL 714 to JOHN METZ, as Trustee and/or his designee(s), along with any and all financial records and an explanation for all receipts, disbursements, and financial transactions of any kind by Local 714[;]

5. Refrain from any destruction, removal, secretion, or alteration of the financial records of LOCAL 714;

6. Provide a complete accounting of the collective bargaining relationships and agreements of LOCAL 714 TO JOHN METZ, as Trustee and/or his designee(s) along with any and all certificates, agreements or other indicia of recognition of

LOCAL 714 as a representative of any person or persons plus any and all collective bargaining contracts, letters of modification and similar documents of any kind of LOCAL 714; and

7. Refrain from any destruction, removal, secretion, alteration of any documents reflecting the collective bargaining relationships or agreements of LOCAL 714.

B. Shall cease from failing to comply with the terms of the emergency trusteeship imposed on IBT LOCAL 714 by the General President of the IBT

Temporary Restraining Order, *International Bhd. of Teamsters, et al. v. Local Union 714, et al.*, 96 C 4903 (N.D.Ill. Aug. 9, 1996). On August 19, 1996, Judge Andersen extended the Temporary Restraining Order until 5:00 P.M. on August 29, 1996.

## DISCUSSION

Currently before the Court is plaintiffs' motion for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65(a). (*See* Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction To Enforce an Emergency Trusteeship and/or in Opposition to Defendant's Motion Regarding Such Emergency Trusteeship ("Plaintiffs' Memo").) Plaintiffs contend that a preliminary injunction should issue because the trusteeship imposed on Local 714 is presumptively valid and because Local 714 has resisted imposition of the trusteeship. *Id.* at 2. In opposition to plaintiffs' motion, defendant has filed a response styled as a "Motion To Dismiss or Transfer and in Opposition To Motion for a Preliminary Injunction."[4] (Local 714's Memorandum of Law in Support of Motion To Dismiss or Transfer and in Opposition To Motion for a Preliminary Injunction ("Defendant's Memo").) Defendant contends that this Court should dismiss or transfer the instant action because: (1) the instant action is not within this Court's retained jurisdiction under the Consent Decree, *id.* at 2–6; (2) this Court lacks personal jurisdiction over defendant, *id.* at 7–8; (3) venue is improper

in this district, *id.* at 8–9; and (4) a preliminary injunction should not issue because plaintiffs are unlikely to succeed on the merits of their claim, *id.* at 9–10.

The instant motion is being decided without oral argument because the parties explicitly waived their right to a hearing on plaintiffs' preliminary-injunction motion. (Letter from Anthony DiSarro, Esq. and Richard M. Seltzer, Esq. to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York (Aug. 27, 1996) (on file with the Clerk of the United States District Court for the Southern District of New York.).) For the following reasons, plaintiffs' motion is granted, and defendant's motion is denied.

### 1. Defendant's Challenges To Jurisdiction and Venue Are Meritless

■ Defendant's claims that this Court lacks jurisdiction to hear the instant dispute, this Court lacks jurisdiction over defendant, and that this Court is not the proper venue must all be denied because these claims are flatly contradicted by well-settled Consent Decree precedent. Because defendant's claims are merely a rehash of arguments that have been considered and rejected by this Court previously, these claims need only be discussed briefly.

In an Opinion and Order filed by this Court today in *International Bhd. of Teamsters, et al. v. Local Union 745, et al.*, 96 Civ. 6328 (Aug. 29, 1996) ("the Local 745 Case"), this Court rejected identical challenges regarding jurisdiction and venue. Like the instant case, the Local 745 case concerns the imposition of an emergency trusteeship on an IBT local by General President Carey. Carey sought to impose the trusteeship after he received an investigative report from the IRB that raised allegations of wrongdoing in the Local and recommended that the IBT impose a trusteeship. When Local 745's officers resisted the IBT's attempt to impose a trusteeship, the IBT brought suit in this Court to enforce the trusteeship. Local 745's officers brought suit in Federal District

---

4. It is unclear whether defendant's filing constitutes one motion—seeking either dismissal or transfer of the instant case—or two motions— one seeking dismissal and one seeking transfer. This Court has construed defendant's filing as one motion.

Court in Texas to enjoin the IBT from imposing the trusteeship on Local 745. Thereafter, the IBT made a motion before this Court for an injunction, preventing Local 745's officers from resisting the imposition of the trusteeship and enjoining the plaintiffs in the action in the Federal District Court in Texas from pursuing that action in any court or forum other than this Court. In opposition to the IBT's motion, Local 745's officers argued that this Court lacked jurisdiction over the Local 745 dispute and lacked personal jurisdiction over Local 745's officers. Moreover, Local 745's officers claimed that this Court was an improper venue for resolving the dispute regarding the trusteeship at Local 745. This Court rejected each of these claims.

In the instant case, defendant's challenges to jurisdiction and venue are identical to those raised in the Local 745 case and must be rejected for the reasons that this Court found compelling in the Local 745 Case. This identity of argument is hardly surprising because Local 714 and Local 745 have both employed the same counsel, Winston & Strawn.

In addition, Local 714's challenges to jurisdiction and venue are meritless because this Court already has ruled on these issues in the instant case. In the August 26, 1996, Opinion and Order, this Court found that the Local 714 Case fell within this Court's jurisdiction because "the Local 714 Case implicates the Consent Decree." 88 Civ. 4486, August 26, 1996, Amended Opinion & Order at 10. Accordingly, this Court held that "the All Writs Act confers jurisdiction over this Court to adjudicate this case." *Id.* Thus, defendant's arguments are meritless.

*2. Plaintiffs Have Met the Standard for Issuing a Preliminary Injunction*

■ "Ordinarily, a party seeking a preliminary injunction must meet the burden established by [the] now familiar test: 1) irreparable harm should injunctive relief not be granted and 2) either likelihood of success on the merits, or sufficiently serious factual questions making a fair ground for litigation with a balance of hardships tipping in the movant's favor." *International Bhd. of*

*Teamsters v. Local Union 810,* 19 F.3d 786, 789 (2d Cir.1994) (citations omitted). The Second Circuit, however, has held that the "scope of the examination by the district court is limited" in the labor trusteeship context by the statutory scheme that governs labor trusteeships. *Id.*

Section 304 of the LMRDA empowers a district court to enjoin a local union's resistance to its parent organization's imposition of trusteeship over the local's affairs. 29 U.S.C. § 464(c). Section 304(c) provides:

> In any proceeding to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing either before the executive board or before such other body as may be provided in accordance with its constitution or bylaws shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302 [29 U.S.C. § 462].

■ According to the Second Circuit, "the scope of the examination by the district court is limited [under § 464] to whether the parent union showed a likelihood of success on the merits of its claim of right to impose the trusteeship and whether it would suffer irreparable harm should the preliminary injunction permitting a trusteeship not be granted." *Local 810,* 19 F.3d at 790–91; *see National Ass'n of Letter Carriers v. Sombrotto,* 449 F.2d 915, 923 (2d Cir.1971). Moreover,

> [o]nce the parent organization demonstrates the likelihood of success on the merits of its claim of right to impose the trusteeship, the burden shifts to the local to show either that the trusteeship was not imposed in accordance with the procedural requirements of the union constitution or that the parent organization acted without good faith or for a statutorily unauthorized purpose.

*Id.* at 790 (internal citations omitted); *see Sombrotto,* 449 F.2d at 923. This statutory presumption of validity arises even where a temporary trusteeship is imposed prior to a union hearing, so long as the union constitution provides for such a procedure. *Local 810,* 19 F.3d at 791.

In order to obtain a preliminary injunction from this Court, the IBT must show: (1) likelihood of success on the merits of its claim of right to impose a trusteeship on Local 714; and (2) irreparable injury to the union if the trusteeship is not imposed. Once the IBT has satisfied this requirement, the burden shifts to Local 714 to show that the trusteeship was imposed: (1) in a manner that contravenes the procedural requirements of the IBT Constitution; (2) in bad faith; or (3) for a statutorily unauthorized purpose.

■ Because the IBT sought to impose a trusteeship on Local 714 without holding a prior union hearing, the IBT had the burden of demonstrating that the purpose for imposing the temporary trusteeship was authorized by the IBT Constitution, and that the trusteeship should be imposed without a prior union hearing. *Id.* at 792. Article VI, Section 5(a) of the IBT Constitution authorizes the IBT General President to impose a temporary trusteeship over an IBT local "if the General President believes that such action is necessary for the purposes of correcting corruption or financial malpractice [or] restoring democratic procedures." IBT Const., Art. VI, § 5(a). Moreover, a temporary trusteeship may be imposed without a hearing where "in the judgment of the General President, an emergency situation exists within the Local Union." *Id.*

Although the IBT Constitution does not define "emergency," the Second Circuit has explained that it means "an unforeseen combination of circumstances or the resulting state that calls for immediate action." *Local 810,* 19 F.3d at 793 (quoting Webster's Collegiate Dictionary 9th ed.1989.) The Second Circuit further has stated that

> [i]n order to comply with the procedural mandates of its constitution, the general president must have had a good faith belief that a situation within the local was developing suddenly and unexpectedly or through an unforeseen combination of circumstances; that the situation was one implicating corruption, financial malpractice or undemocratic procedures; and that the circumstances demanded immediate action.

*Id.*

This Court finds that Carey had a basis to believe in good faith that it was necessary to impose an emergency trusteeship on Local 714. As plaintiffs correctly argue, because the IRB required "General President Carey to report within two weeks on his actions in regard to Local 714[,]" Carey had a basis for believing in good faith that "the IRB considered the situation in Local 714 an emergency requiring immediate action by the General President." (Plaintiffs' Memo at 11.) The IRB could have ordered Carey to take action within a period of up to ninety days. Thus, Carey made his decision to impose a trusteeship on Local 714 after he received an IRB Report that not only details pervasive and on-going corruption in Local 714 and recommends Carey impose a trusteeship but also requires Carey to report on actions taken to remedy the corruption in Local 714 in two weeks. The IRB's Report provided Carey with a good faith basis for believing that an emergency existed in Local 714 that required the immediate imposition of a trusteeship. *See International Bhd. of Teamsters v. Local 705,* 827 F.Supp. 513, 515 (N.D.Ill.1993) ("The IRB report and the IRB rules requiring prompt action furnish the basis for Carey's judgment and the emergency trustee."). Because the IBT's moving papers and supporting documents in this case demonstrate that Carey had a basis to believe in good faith that a situation existed within Local 714 that required the immediate imposition of a temporary trusteeship over the Local, this Court "did not need to undertake a full evidentiary hearing as to whether an emergency in fact existed, as IBT's claim of right under Article VI § 5(a) of the constitution became operative upon the General President's good faith belief that such a situation existed." *Local 810,* 19 F.3d at 793.

Turning to the second burden that the IBT must satisfy in the instant case, this Court finds that the IBT has demonstrated that it will suffer irreparable injury if defendant is not enjoined. Plaintiffs claim that the IBT's reputation will be damaged if a temporary trusteeship is not imposed on Local 714. Both the Second Circuit and other federal courts have found that harm to a union's reputation constitutes irreparable injury. *Local 810,* 19 F.3d at 794, *International Bhd. of Teamsters v. Local Union 705,* 827 F.Supp. 513, 516 (N.D.Ill.), *appeal dismissed,* No. 93–2789 (7th Cir.1993). In light of this Court's persistent efforts to enforce the Consent Decree and its goal of eradicating corruption within the IBT, this Court finds that such harm constitutes irreparable injury in the instant case, and thus, that the IBT has satisfied its burden.

Because the IBT met its burdens under the *Local 810* test, the validity for the IBT's action is presumed under Section 301 of the LMRDA. *Local 810,* 19 F.3d at 794. To rebut this presumption, Local 714 must demonstrate by clear and convincing evidence that Carey: (1) did not impose the trusteeship on Local 714 in accordance with the procedural requirements of the IBT Constitution; (2) that he reached his determination that an emergency existed in Local 714 in bad faith; or (3) that the purpose for which Carey placed the temporary trusteeship over Local 714 was not authorized by Section 302 the LMRDA. *Id.*

In the papers that defendant submitted in opposition to plaintiffs' motion, defendant asserts that Carey's act of imposing a trusteeship on Local 714 was contrary to the IBT Constitution because no emergency existed. Defendant raises no claim in its motion papers that Carey either acted in bad faith or that Carey's actions were not authorized by Section 302 of the LMRDA.

As previously discussed, this Court finds that Carey acted in accordance with the procedural requirements set forth in the IBT Constitution for placing an IBT local in trusteeship, and this Court finds that Carey had a basis for believing in good faith that an emergency existed at Local 714 that would

justify the imposition of a trusteeship. Accordingly, defendant's argument is meritless.

## CONCLUSION

Plaintiffs' Rule 65(a) motion is GRANTED.

Defendant's motion to dismiss or transfer the instant case is DENIED.

IT IS HEREBY ORDERED THAT:

A. Defendant, its officers, and its successors, agents, assigns, representatives, employees, attorneys and each and every other person acting at the direction of or in concert with them, shall:

1. Deliver all property, funds, books, records and assets of any kind in their possession to John Metz as Trustee and/or his designee(s);

2. Cease and desist from representing themselves as the authorized officers and/or representatives of Local 714, unless so authorized by John Metz, as Trustee and/or his designee(s);

3. Cease and desist from interfering in any manner with the conduct of the trusteeship by John Metz, as Trustee and/or his designee(s);

4. Provide a complete accounting of the financial condition of Local 714 to John Metz, as Trustee and/or his designee(s), along with any and all financial records and an explanation for all receipts, disbursements, and financial transactions of any kind by Local 714;

5. Refrain from any destruction, removal, secretion, or alteration of the financial records of Local 714;

6. Provide a complete accounting of the collective bargaining relationships and agreements of Local 714 To John Metz, as Trustee and/or his designee(s) along with any and all certificates, agreements or other indicia of recognition of LOCAL 714 as a representative of any person or persons plus any and all collective bargaining contracts, letters of modification and similar documents of any kind of Local 714; and

7. Refrain from any destruction, removal, secretion, alteration of any documents reflecting the collective bargaining relationships or agreements of Local 714.

B. Shall cease from failing to comply with the terms of the trusteeship imposed on IBT Local 714 by the General President of the IBT.

SO ORDERED.