UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE- HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defen- dants.

No. 88 CIV. 4486 (DNE).

United States District Court, S.D. New York.

July 26, 1993.

Charles M. Carberry, Investigations Offi- cer of the Intern. Broth. of Teamsters, New York City (Celia A. Zahner, of counsel), for Intern. Broth. of Teamsters.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Steven C. Bennett, Asst. U.S. Atty., of counsel), for U.S.

Franzblau, Dratch & Friedman, P.C., Roseland, NJ (S.M. Chris Franzblau, Julian Wilsey, of counsel), for Arnold Ross.

MEMORANDUM and ORDER

EDELSTEIN, District Judge:

In an Opinion & Order dated August 19, 1992, 803 F.Supp. 761 (S.D.N.Y.1992), this Court promulgated "Rules and Procedures for Operation of the Independent Review Board (the "IRB") of the International Brotherhood of Teamsters" (the "Rules"). These Rules, drawn from the Consent De- cree, judicial decisions regarding the Consent Decree, and the International Brotherhood of Teamsters (the "IBT") Constitution as amended at the 1991 IBT International Con- vention, are intended to govern the operation of the IRB. In *United States v. IBT*, 998 F.2d 1101 (2d Cir.1993), the United States Court of Appeals for the Second Circuit af- firmed all Rules promulgated in this Court's Opinion & Order, with the exception of Rules D(2), F(2), N(2), and O, which the court affirmed in part and reversed in part.

Accordingly, it is hereby ordered that the Rules, attached as Exhibit A and modified in accordance with the Second Circuit's deci- sion, shall constitute the Rules and Proce- dures for Operation of the Independent Re- view Board of the International Brotherhood of Teamsters. These Rules are effective im- mediately. The IBT, all subordinate entities of the IBT, and all members of the IBT are bound by the Rules as contained in Exhibit A.

SO ORDERED.

**EXHIBIT A**

*Rules and Procedures for Operation of the Independent Review Board for the In- ternational Brotherhood of Teamsters*

*A. Introduction*

1. These "Rules and Procedures for Op- eration of the Independent Review Board of

the International Brotherhood of Teamsters" (the "Rules") emanate from the voluntary settlement in the action commenced by plaintiff United States of America (the "Government") against defendants the International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") in *United States v. International Brotherhood of Teamsters,* No. 88 Civ. 4486 (S.D.N.Y.) (DNE). This settlement is embodied in the voluntary consent order entered on March 14, 1989 (the "Consent Decree"). Pursuant to the Consent Decree, this Court retains exclusive jurisdiction to implement the Consent Decree and to entertain future applications by the parties.

2. The Consent Decree provides for the establishment of an Independent Review Board (the "IRB") for the IBT, comprised of a member appointed by the Attorney General of the United States of America on behalf of the Government, a member appointed by the IBT, and a third member chosen by the Government and IBT appointees. These Rules are drawn from the Consent Decree, judicial decisions regarding the Consent Decree, and the IBT Constitution as amended at the 1991 IBT International Convention (the "1991 IBT Constitution"). These Rules are intended to govern the operation of the IRB. The parties, and the officers, members, employees, representatives, agents and affiliates of the IBT, should consult these Rules for information on IRB operations.

3. This Court retains exclusive jurisdiction to decide any and all issues relating to the purpose, operation, and authority of the IRB and the interpretation of these Rules.

4. Interpretation of these Rules shall be guided by the principles, as set forth in the Consent Decree, that "there should be no criminal element or La Cosa Nostra corruption of any part of the IBT," and that "it is imperative that the IBT, as the largest trade union in the free world, be maintained democratically, with integrity and for the sole benefit of its members and without unlawful outside influence."

### B. Term of Office

The initial term of office of each IRB member shall be until the completion of the 1996 International Convention, and thereafter the term of office shall be five years. Each IRB member may be reappointed to additional terms by that member's appointing entity. No IRB member may be removed from office except upon application to this Court by the Government or the IBT alleging malfeasance or dereliction of duty. In the event of a vacancy during a term of a member of the IRB, a replacement shall be selected in the same manner as the person who is being replaced was selected.

### C. IRB Offices

1. The IRB shall operate from offices as close as practicable to the International Union's headquarters in Washington, D.C. The IRB shall have the authority to conduct hearings at such locations as the IRB members deem appropriate.

2. IRB members need not be present at the central IRB offices on a full-time basis, and may perform their functions (other than conducting IRB meetings and disciplinary hearings, which shall be held at such locations as the IRB members deem appropriate) at their professional offices or other appropriate locations.

### D. Meetings and Decisions of the IRB

1. The IRB shall meet, not less than once a month, at its offices, or at such other place as is fixed by the IRB members. The IRB may meet and take action by telephone conference.

2. Except as otherwise provided by these Rules, a quorum of the IRB shall be required to conduct any of its business. A quorum shall consist of at least two members of the IRB. Except as otherwise provided by these Rules, decisions of the IRB shall be made by majority vote. One IRB member, with the consent of the other two, may be authorized to conduct a hearing pursuant to Paragraph "J. Hearings," and issue a written recommended decision on any matter. Before such a decision shall be effective, it must be approved by a majority of the IRB. In the

event of a deadlock, in a situation where two IRB members have voted, the third IRB member shall be consulted and shall cast the deciding vote. In the event of a deadlock, where the third member fails or refuses to vote on the matter, the matter shall be referred to this Court for final disposition.

### E. IRB Staff

1. The IRB shall employ a Chief Investigator to exercise the authority and perform the tasks enumerated in Paragraph "*H. Investigations*" of these Rules. The IRB shall also employ a staff of attorneys, investigators, auditors, accountants and other personnel as the IRB deems necessary and proper for completion of the IRB's tasks.

2. Each IRB member may employ personal staff, including but not limited to secretaries and attorneys, to assist them in the performance of their functions.

3. Each IRB member, with the consent of the other IRB members, may designate one or more assistants to act on the member's behalf and to aid in carrying out the IRB member's duties.

4. The IRB may designate a Staff Manager, who shall manage the IRB's administrative functions.

### F. Salaries and Finances

1. The IBT shall pay all costs and expenses (including compensation) of the IRB, its staff, and the staff of the individual IRB members. These costs and expenses include, but are not limited to: (a) the costs associated with the performance of any of the functions outlined in these Rules; (b) the cost of communications pursuant to Paragraph "*N. Communications;* " and (c) the cost of establishing and operating a toll-free telephone service for purposes of receiving reports of corruption involving the IBT and its affiliates pursuant to Paragraph "*H. Investigations.*"

2. The IRB members and the Chief Investigator shall be paid an annual salary of $100,000, with yearly cost-of-living adjustments, to be paid in twelve equal monthly installments. The IRB members and the Chief Investigator, however, shall keep track of their time on an hourly basis, and at the end of each year the IBT shall pay each IRB member and the Chief Investigator any monies due beyond the $100,000 based upon an accounting of time spent and the hourly rates charged by the individual. Compensation of an IRB member or the Chief Investigator, when based upon an hourly rate, shall not include overhead costs, such as rent, library expenses, and the wages and benefits of secretarial and support staff, to the extent that the IBT—in providing the IRB office space and support staff—already covers overhead costs. If any member of the IRB or the Chief Investigator does not have regular hourly rates, the IRB shall set a reasonable hourly rate for that individual's services. Staff for the IRB and staff for individual IRB members shall be compensated as directed by the IRB. All costs and expenses of the IRB and its staff and the staff of the individual IRB members are to be billed to the IBT on a monthly basis. The IBT must pay all such bills within 14 days.

3. No member of the IRB or its staff, including the Chief Investigator, shall, at the same time as he holds any position with the IRB, hold any position with the Government, the IBT, or any IBT affiliate, other than membership in the IBT.

4. With the consent of the Government, the IRB may draw upon the $100,000 fund previously created for the Independent Administrator and Investigations Officer, and the $150,000 fund previously created for the Election Officer. The IRB shall submit quarterly expense and fee applications to the IBT General President, this Court, and the Office of the United States Attorney for the Southern District of New York. The parties shall have fourteen business days to submit to this Court their objections to the expense and fee application. If the IBT submits no objections to the application, or if this Court overrules the IBT's objections, the IBT shall promptly reimburse the funds for the approved amount.

5. The IRB, its staff, investigators, auditors, accountants, attorneys, and other employees, shall be provided with sick pay, holiday pay, vacation pay, health insurance and pension coverage, payment of FICA self-em-

ployment tax, and other benefits equivalent to those provided to similarly situated IBT employees.

### G. Indemnification

The IBT shall purchase a policy of insurance in an appropriate amount to protect the members of the IRB, the Chief Investigator, and persons acting on their behalf from personal liability (or costs incurred to defend against the imposition of liability) for any of their actions on behalf of the IBT, the IRB, or the Chief Investigator. If such insurance is not available, or if the IBT so elects, the IBT shall indemnify the members of the IRB, the Chief Investigator, and persons acting on their behalf from any liability (or costs incurred to defend against the imposition of liability) for conduct taken pursuant to the Consent Decree, the 1991 IBT Constitution, and/or these Rules.

### H. Investigations

1. The IRB shall exercise such investigative authority as the General President and General Secretary–Treasurer are authorized and empowered to exercise pursuant to the 1986 IBT Constitution and/or the 1991 IBT Constitution, as well as any and all applicable provisions of law.

2. The IRB shall investigate any allegations of corruption in the IBT, including, but not limited to: bribery; extortion; embezzlement; use or threats of force or violence against members to interfere with or extort their rights under the 1991 IBT Constitution or their union democracy rights under applicable law, including their rights to assemble, express their views, vote, seek election to office, support the candidates of their choice, and participate in the affairs of the IBT; acceptance of money or other things of value from any employer or agent of an employer, in violation of applicable law; any act of racketeering activity, as defined in applicable law; aiding and abetting any act of racketeering, including the extortion of IBT members' union democracy rights as defined by applicable law; any allegations of domination, control, or influence over any IBT affiliate, officer, member, employee, or representative by any organized crime family or any other criminal group; any allegations of knowing association with a member of La Cosa Nostra or any other person enjoined from participating in Union affairs; conduct that in the IRB's view brings reproach upon the Union; any failure by an IBT entity to pursue and/or decide in a lawful, responsible, and timely manner a matter that has been referred to it under "*I. Investigative Reports and IBT Action;* " and any failure to cooperate fully with the IRB in any investigation of the foregoing.

3. The IRB's authority shall include, but not be limited to, the authority:

    a. To cause the audit or examination of the books of the IBT or any affiliated IBT body at any time to the extent that the IRB may determine necessary.

    b. To receive, no less than one week prior to any meeting of the GEB, the agenda for the meeting, and to attend meetings or portions of meetings of the GEB that relate in any way to the rights, duties or activities of the IRB.

    c. To take and require sworn statements or sworn in-person examinations of any officer, member, employee, representative, or agent of the IBT, provided that the IRB has given the person to be examined at least ten (10) days advance notice in writing and also provided that the person to be examined has the right to be represented by an IBT member or legal counsel of the person's choosing during the course of said examination. Failure to appear for a duly-noticed in-person examination shall be deemed a failure to cooperate fully with the IRB.

    d. To take, upon notice and application for cause made to this Court, which shall include affidavit(s) in support thereof, the sworn statements, or sworn in-person examinations of persons not covered in the foregoing subparagraph "c."

    e. To attend meetings of any affiliated body of the International Union.

4. The IRB may consult with and receive information from the Investigation Officer, the Independent Administrator and the Election Officer, appointed pursuant to the Consent Decree.

5. The IRB may establish a toll-free telephone service for purposes of receiving reports of corruption involving the IBT and its affiliates.

6. Each member of the IRB shall have the authority to refer matters to the Chief Investigator for investigation in accordance with these Rules.

7. The Chief Investigator shall have the same authority as the IRB as provided in this Paragraph "*H. Investigations.*"

### I. Investigative Reports and IBT Action

1. Upon completion of an investigation, the IRB shall prepare, or shall direct the Chief Investigator to prepare, a written report (the "Investigative Report") detailing proposed findings, charges, and recommendations concerning the discipline of IBT officers, members, employees, agents and representatives, or concerning recommendations that any IBT affiliated body be placed in trusteeship.

2. In the event that the Chief Investigator prepares an Investigative Report, the IRB may approve, modify, or reject the Chief Investigator's Investigative Report, or may direct that the Chief Investigator conduct further investigation in connection with the Investigative Report.

3. The IRB shall make available a copy of any Investigative Report for public inspection at the IBT office in Washington, D.C.

4. The IRB shall submit any Investigative Report to the appropriate IBT entity, the General President, the General Executive Board, and the IBT Ethical Practices Committee. The IRB may designate a matter as an original jurisdiction case for General Executive Board review if the matter concerns an offense committed against an officer of the International Union or the International Union. The IRB shall include in the Investigative Report the number of days—up to a maximum of 90 days—in which an IBT entity must resolve a referred matter in order to have acted in a lawful, responsible, and timely manner.

5. Upon referral, the IBT entity to which a matter is referred shall promptly undertake whatever action is appropriate under the circumstances to resolve the referred matter, as provided by the IBT Constitution, applicable law, and these Rules. The IBT entity shall resolve the referred matter within the time prescribed by the IRB in the Investigative Report. The IRB shall monitor all matters that it has referred for action, and may make use of any powers enumerated in Paragraph "*H. Investigations*" herein in doing so. The IRB may also direct the Chief Investigator to ensure that the IBT entity resolves a referred matter in a lawful, responsible, and timely manner.

6. Within 90 days of the referral, the IBT entity to which a matter has been referred by the IRB shall file with the IRB written findings setting forth the specific actions taken and the reasons for that action.

7. If the IRB, at any time after it issues its Investigative Report, determines, in its sole judgment, that a matter is not being or has not been pursued and decided by the IBT entity to which the matter has been referred in a lawful, responsible, and timely manner, or that the resolution proposed by the relevant IBT entity is inadequate under the circumstances, the IRB shall notify the IBT affiliate of its view, and the reasons therefor. A copy of said notice shall be sent by the IRB to the General President and the GEB.

8. Within 10 days of the receipt of the notice described in the preceding paragraph, the IBT entity involved shall file with the IRB an affidavit setting forth any and all additional actions it has taken and/or will take to correct the deficiencies as set forth in the IRB's notice, and shall state the date by which such action was or will be completed. After receipt and consideration of the IBT entity's affidavit, the IRB shall issue a written determination concerning the adequacy of the additional action taken and/or proposed by the IBT entity. If the IRB concludes that the IBT entity involved has failed to take or propose satisfactory action to remedy the defects specified by the IRB notice described in the preceding subsection, the

IRB shall promptly convene a hearing, after notice to all affected parties.

9. Failure to act in a lawful, responsible, and timely manner shall be deemed a failure to cooperate fully with the IRB.

### J. Hearings

1. Prior to any hearing, the IRB or the Chief Investigator, at the IRB's direction, shall serve a copy of the Investigative Report to all affected parties.

2. The person charged or the IBT affiliate subject to trusteeship shall be given a reasonable time, in no event less than 10 days, to prepare a defense.

3. A fair and impartial hearing shall be conducted before the IRB. The purpose of the hearing shall be to determine whether the proposed findings, charges, or recommendations regarding discipline or trusteeship found in the Investigative Report are supported by the evidence.

4. The person charged or the IBT affiliate subject to trusteeship may be represented by an IBT member or by counsel at the hearing.

5. Subject to the other provisions of this Paragraph "J. Hearings," the IRB may incorporate additional procedural safeguards that in the judgment of the IRB shall ensure a fair hearing.

6. All parties, including the Chief Investigator, shall be permitted to present any facts, evidence, or testimony that is relevant to the issue before the IRB. The hearings shall be conducted under these Rules and the rules and procedures generally applicable to labor arbitration hearings. In order to be sustained, the proposed findings, charges, or recommendations regarding discipline or trusteeship, contained in the Investigative Report, must be supported by a preponderance of reliable evidence.

7. If the proposed findings, charges, or recommendations contained in the Investigative Report regarding discipline or trusteeship are sustained, the IRB shall have the authority to impose any discipline or conditions of trusteeship authorized by the IBT Constitution, the Consent Decree, and applicable law.

8. After the hearing has been conducted, the IRB shall issue a written decision, which shall be sent to the General President, each member of the GEB, and all affected parties.

### K. Enforcement

1. A decision of the IRB after hearing shall be final and binding. The IRB shall submit the decision to this Court to be entered as an order of the Court. The appropriate IBT entity, the General President, and the GEB shall immediately take all action necessary to implement the decision, consistent with the IBT Constitution and applicable federal law. Failure to immediately take all action necessary to implement the IRB's decision shall be deemed a failure to cooperate fully with the IRB.

2. The IRB shall have the right to examine and review actions taken by the appropriate IBT entity, the General President, and the GEB to implement the IRB's decisions. The IRB may make use of any powers enumerated in Paragraph "H. Investigations" herein, or may direct the Chief Investigator to ensure that the appropriate IBT entity, the General President, and the GEB properly implement the IRB's decisions. In the event that the IRB is dissatisfied with the implementation of its decisions by the appropriate IBT entity, the General President, and the GEB, the IRB shall have the authority to take whatever steps are appropriate to ensure proper implementation of any such decision, including, without limitation, the authority to seek enforcement of its decision from this Court.

### L. Cooperation

All officers, members, employees, agents and representatives of the International Union and its affiliated bodies shall cooperate fully with the IRB in the course of any investigation or proceeding undertaken by the IRB and in any effort by the IRB to enforce its decisions. Unreasonable failure to cooperate with the IRB shall be deemed conduct that brings reproach upon the Union, and which is thereby within the IRB's investigatory and decisional authority.

### M. Review of IBT Decisions

1. The IRB shall be apprised of and have the authority to review any disciplinary or trusteeship decision of the General President, the GEB or the IBT Ethical Practices Committee, and shall have the right to affirm, modify, or reverse any such decision. The IRB's affirmance, modification, or reversal of any such decision shall be in writing and shall be final and binding. The IRB shall submit such a decision to this Court to be entered as an order of the Court.

2. The IRB, or, if the IRB so authorizes, the Chief Investigator, may make use of any powers enumerated in Paragraph "*H. Investigations*" to ensure that the General President, the GEB, or the IBT Ethical Practices Committee properly informs the IRB of any disciplinary or trusteeship decision.

3. Failure to inform the IRB of disciplinary or trusteeship decisions of the General President, the GEB or the IBT Ethical Practices Committee, or to enforce any decision of the IRB affirming, modifying, or reversing any IBT disciplinary or trusteeship decision shall be deemed to be a failure to cooperate fully with the IRB.

### N. Communications

1. The IRB shall, on a quarterly basis, report to this Court concerning the activities of the IRB.

2. The IRB shall have the authority to distribute materials to the membership of the IBT (including but not limited to copies of these Rules), and to publish materials, including a report, in *The New Teamster*, as necessary to facilitate its investigations and to ensure the proper implementation of its decisions.

3. The IRB shall have the authority to inform the General President, the GEB, the Ethical Practices Committee, the IBT and/or its affiliates and membership, of the identities of persons or entities who are or have been the subject of disciplinary action by the IRB or Independent Administrator, and/or who are or have been identified as members or associates of La Cosa Nostra or any other organized crime group, for purposes of informing the members, officers, employees, agents and representatives of the IBT and its affiliates that association with or employment of these persons or entities may be cause for investigative or disciplinary action.

### O. Applications

The IRB may make application to this Court at any time and for any reason that touches upon any aspect of the IRB, including but not limited to the purpose, operation, or authority of the IRB. In addition, a single member of the IRB may make application to this Court upon a showing of compelling circumstances. "Compelling circumstances" shall include, but not be limited to, situations where one or more of the other members have failed or refused to conduct a hearing, issue a decision, cast a needed vote, or otherwise act as required by these Rules. In reviewing actions of the IRB, this Court shall apply the same standard of review applicable to review of final federal agency action under the Administrative Procedure Act.