*281
 

 OPINION & ORDER
 

 EDELSTEIN, District Judge:
 

 This opinion emanates from the voluntary settlement of an action commenced by plaintiff United States of America (“the Government”) against,
 
 inter alia,
 
 defendant International Brotherhood of Teamsters (“the IBT” or “the Union”) and the IBT’s General Executive Board. The settlement is embodied in the voluntary consent order entered March 14, 1989 (“Consent Decree”). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree’s various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator (“LA”) to oversee the Consent Decree’s provisions, the Investigations Officer to bring charges against corrupt IBT members, and the Election Officer to supervise the electoral process that led up to and included the 1991 election for IBT International Union Office. In the second phase of the Consent Decree, the LA was replaced by a three-member Independent Review Board (“IRB”).
 

 During its more than seven-year history, the Consent Decree has spawned a tremendous amount of litigation that has required this Court to issue numerous opinions. In one of those opinions, pursuant to this Court’s authority under the All Writs Act, 28 U.S.C. § 1651(a), this Court enjoined “all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers,' representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]” December 15, 1989, Order at 3;
 
 see also United States v.
 
 
 *282
 

 International Bhd. of Teamsters [All Writs Act Decision],
 
 728 F.Supp. 1032 (S.D.N.Y.),
 
 modification denied,
 
 735 F.Supp. 502 (S.D.N.Y.),
 
 affd,
 
 907 F.2d 277 (2d Cir.1990).
 

 On August 15, 1996, Local 107 of the IBT (“Local 107” or “the Local”), located in Philadelphia, Pennsylvania, commenced an action in the Eastern District of Pennsylvania challenging an emergency trusteeship imposed over Local 107 by IBT General President Ron Carey (“Carey”) in response to a recommendation by the Independent Review Board of the IBT (“the IRB”).
 
 International Bhd. of Teamsters v. Local Union 714 of the IBT,
 
 Civ. No. 95-5633 (E.D.Pa.) (HB) (“Local 107 Action”). Currently pending before this Court is an application by the IBT for an Order enjoining Local Union 107 from prosecuting the Local 107 Action, or any claims raised by the parties therein, in any court or forum other than this Court, and enjoining all other parties from litigating such claims concerning the Local 107 trusteeship in any court or forum other than this Court. After reviewing the facts underlying this action, this Court finds that: (1) the Local 107 Case is properly within the jurisdiction of this Court; (2) the Local 107 Case falls squarely within the four corners of this Court’s All Writs Act Decision; (3) the All Writs Act empowers this Court to enjoin the parties to the Local 107 Case from pursuing any further legal action regarding this case in any forum other than this Court; and (4) the Local 107 Case should be transferred immediately to this Court for all further matters.
 

 FACTS
 

 Local 107 initiated the Local 107 Action in opposition to an attempt by IBT General President Ron Carey to impose an emergency trusteeship over the Local, upon the recommendation of the IRB. (Memorandum of Law in Support of the International Brotherhood of Teamsters’ Application for Injunctive Relief,
 
 United States of America v. International Bhd. of Teamsters,
 
 88 Civ. 4486 (“IBT Memo”), at 2 (S.D.N.Y. Aug. 26, 1996).) Pursuant to the authority vested in the IRB by the IBT Constitution and the Consent Decree, the IRB investigated allegations of corruption and misconduct by Local 107 and its officers and Executive Board. Following this investigation, the IRB issued an investigative report detailing evidence of wrongdoing at Local 107, such as the continuing association of Local 107 officers with individuals reputed to be associated with organized crime,
 
 id.
 
 at 4;
 
 see
 
 (Independent Review Board, Trusteeship Recommendation Concerning Local 107 (“IRB Report”), at 5-8 (Aug. 6, 1996)), financial malpractice, (IBT Memo at 4-5); (IRB Report at 8-16), and failure to hold regular membership meetings as required by the IBT Constitution and Local 107 By-Laws. (IBT Memo at 5); (IRB Report at 17-19.) Pursuant to the IRB Rules approved by this Court,
 
 United States v. International Bhd. of Teamsters [IRB Rules Decision],
 
 829 F.Supp. 602 (S.D.N.Y.1993), the IRB recommended that Carey place Local 107 in trusteeship “in order to correct financial malpractice, to ensure that the Local is run in compliance with the IBT Constitution and the Local’s Bylaws and for the benefit of the Local’s members,” (IRB Report at 1), and required Carey to report on the actions he took in response to the IRB Report and recommendation within two weeks. (IBT Memo at 5); (Letter from John J. Cronin, Jr., Administrator of the IRB, to IBT General President Ron Carey (Aug. 6,1996).)
 

 On August 9, 1996, Carey issued a notice to the officers and members of Local 107, explaining the contents of the IRB Report and stating that, in response to the evidence outlined in the IRB Report, he would impose an emergency trusteeship over the affairs of Local 107 on August 12,1996. (Notice to the Officers and Members of Local 107, Philadelphia, Pennsylvania, from IBT General President Ron Carey (Aug. 1, 1996) (copy on file with Clerk of the Court of the Southern District of New York).) On August 12, 1996, Carey imposed an emergency trusteeship over Local 107 pursuant to the authority vested in him by Article VI, Section 5 of the IBT Constitution. (IBT Memo at 5.)
 

 In response to the General President’s actions, Local 107, its officers, and certain of its members filed suit in the Eastern District of Pennsylvania in opposition to the trusteeship.
 
 *283
 

 Id.
 
 at 6;
 
 see
 
 (Complaint,
 
 International Bhd. of Teamsters, Local Union 107 v. International Bhd. of Teamsters,
 
 Civil Action No. 96-5633 (E.D.Pa.) (HB) (“Local 107 Complaint”) (Aug. 14, 1996).) They also moved for a temporary restraining order and preliminary injunction seeking,
 
 inter alia,
 
 an order “enjoining [the IBT] and their agents from imposing and/or maintaining a trusteeship over Local 107 until such time as this matter is litigated.” (Local 107 Complaint at 1, 9-10.) The Local 107 plaintiffs claim that: (1) “[n]o lawful reason exists for the imposition of the trusteeship, either emergency or otherwise, over the affairs of Local 107,”
 
 id.
 
 ¶ 21); (2) the IBT imposed the trusteeship over Local 107 “as a political reprisal” against the officers and members of local 107 for their alleged support of Carey’s political opponent in the 1996 election for IBT General President,
 
 id.
 
 ¶¶ 25-26; and (3) that no emergency situation existed to justify Carey’s imposition of trusteeship over Local 107 without a prior union hearing.
 
 Id.
 
 ¶¶ 32-33. The Local 107 plaintiffs maintain that the IBT’s actions violate various provisions of the Labor Management Reporting Disclosure Act, 29 U.S.C. §§ 411-12, 462, 464,
 
 id.
 
 at 6-8, the IBT Constitution,
 
 id.
 
 at 9, and Section 301 of the Labor Management Relations Act, 29U.S.C. 185.
 
 Id.
 
 at 8-9.
 

 On August 20, 1996, Judge Bartle granted Local 107s request for a preliminary injunction, finding that no emergency situation existed to warrant imposition of trusteeship over Local 107 without a prior union hearing.
 
 International Bhd. of Teamsters Local Union 107 v. International Bhd. of Teamsters,
 
 935 F.Supp. 599, 603 (E.D.Pa.1996). The court further enjoined the IBT and Carey from exercising control over Local 107 pending further court order, and ordered that the IBT and Carey could apply to dissolve the injunction after an internal union hearing and determination of the charges against Local 107.
 
 Id.
 
 at * 604.
 

 On August 26,1996, the IBT filed an application with this Court seeking an Order enjoining Local Union 107 from prosecuting the Local 107 Action, or any claims raised by the parties therein, in any court or forum other than this Court, and enjoining all other parties from litigating such claims concerning the Local 107 trusteeship in any court or forum other than this Court. (Application of the International Brotherhood of Teamsters,
 
 United States v. International Bhd. of Teamsters,
 
 938 F.Supp. 1174 (S.D.N.Y.1996) (“IBT Application”).) The IBT claims that the Local 107 Action implicates the Consent Decree because it challenges the merits of a trusteeship recommendation made by the IRB pursuant to the Consent Decree, and because the action raises claims regarding election misconduct that are properly within the jurisdiction of the Election Officer appointed pursuant to the Consent Decree.
 
 Id.
 
 at 1175-76; (IBT Memo at 10-15.) It further contends that, because the Local 107 Action implicates the Consent Decree, it is properly within the jurisdiction of this Court pursuant to both the Consent Decree and this Court’s All Writs Act Decision. (IBT Application at 1175); (IBT Memo at 8-9.) In addition, the IBT asserts that enjoining the Local 107 Action in Pennsylvania “will be fully consistent” with other injunctions recently issued by this Court in unrelated but similar IBT-trusteeship eases. (IBT Application at 1175); (IBT Memo at 7-8.)
 

 On August 27, 1996, this Court received a submission from the United States Attorney for the Southern District of New York (“the Government”) regarding the Local 107 Action. (Letter from Assistant United States Attorney Karen B. Konigsberg to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York (Aug. 27, 1996).) In this submission, the Government states that it supports the instant IBT application to enjoin the Local 107 Action.
 
 Id.
 
 at 1. It further claims that the Local 107 Action raises issues regarding the imposition of a trusteeship upon an IBT local IRB similar to those recently resolved by this Court in other IBT-trusteeship cases.
 
 Id.
 
 The Government also maintains that the Local 107 Action implicates the Consent Decree, and that it “should be brought before this Court in order to prevent interference with the authority and actions of the officers appointed under the Consent Decree and with this Court’s jurisdiction over the implementation of the Decree.”
 
 Id.
 
 at 2.
 

 
 *284
 
 This Court has received no submission from Local 107, its officers, or its Executive Board.
 

 DISCUSSION
 

 This Court retains jurisdiction over matters arising under the Consent Decree. Order,
 
 United States v. International Bhd. of Teamsters,
 
 88 Civ. 4486, ¶¶ A.1, K.16 (March 14, 1989) (“Consent Decree”);
 
 United States v. International Bhd. of Teamsters [Darrow],
 
 896 F.Supp. 1339, 1343 (S.D.N.Y.1995). In aid of this Court’s jurisdiction, this Court enjoined “all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]” December 15, 1989, Order at 3;
 
 see also All Writs Act Decision,
 
 728 F.Supp. 1032. In the All Writs Act Decision, this Court cited three reasons why such actions must be brought before this Court: (1) “there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court officers to inconsistent judgments,” which “would encourage forum shopping by subordinate entities seeking a sympathetic ruling,”
 
 All Writs Act Decision,
 
 728 F.Supp. at 1047; (2) “widespread litigation across the country would subvert the reform bogging the Court officers down in duplicative, harassing, and perhaps frivolous litigation,”
 
 id.;
 
 and (3) “judicial economy demands that similar issues not be litigated multiple times in different districts ____”
 
 Id.
 
 at 1048.
 

 On appeal, the Second Circuit affirmed this Court’s ruling. Quoting the Supreme Court, the Second Circuit explained that “the All Writs Act empowers courts to issue extraordinary writs ‘as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued.’”
 
 United States v. International Bhd. of Teamsters [All Writs Act Affirmance],
 
 907 F.2d 277, 280 (2d Cir.1990) (quoting
 
 United States v. New York Tel.,
 
 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977)). The Second Circuit held that this Court “acted well within its authority under the All Writs Act” in enjoining all members and affiliates of the IBT from litigating issues related to the Consent Decree in any court other than the Southern District of New York, and specifically accepted this Court’s reasons for doing so.
 
 Id.
 
 at 280-81. Finally, the Second Circuit rejected appellants’ claim that this Court lacked personal jurisdiction over them both because “[(Injunctions may be issued against non-parties under the All Writs Act,” and because “the All Writs Act requires no more than that persons enjoined have the ‘minimum contacts’ that are constitutionally required under due process.”
 
 Id.
 
 at 281 (quotations and citations omitted). Subsequent to the Second Circuit’s All Writs Act Affirmance, this Court has issued other orders enjoining parties from pursuing suits that implicated the Consent Decree in other courts.
 
 United States v. International Bhd. of Teamsters [Erbacci],
 
 911 F.Supp. 743 (S.D.N.Y.1996);
 
 Darrow,
 
 896 F.Supp. 1339.
 

 This Court finds that the instant dispute arises under the Consent Decree because: (1) the IBT’s actions regarding Local 107 were taken in response to an investigation and report made by the IRB pursuant to the remedial provisions of the Consent Decree; (2) the IRB retains continuing supervisory authority over the IBT’s actions pursuant to the remedial provisions of the Consent Decree and the IRB Rules; and (3) Local 107’s opposition to the IBT’s actions challenges the ability of the officers appointed pursuant to the Consent Decree to carry out their duties under the Consent Decree.
 

 As an initial matter, Paragraph G of the Consent Decree authorizes the creation of the Independent Review Board, and sets forth the basic rules for its operation. Consent Decree, ¶ G. In addition, the “Rules and Procedures for the Operation of the Independent Review Board of the International Brotherhood of Teamsters” (“the IRB Rules”), drafted pursuant to the Consent Decree and approved by this Court, contain additional rules governing the IRB’s opera
 
 *285
 
 tion.
 
 IRB Rules Decision,
 
 829 F.Supp. at 602, 603 (Rule A.2). “The IBT, all subordinate entities of the IBT, and all members of the IBT are bound by the [IRB] Rules____”
 
 Id.
 
 at 602.
 

 This case arises under the Consent Decree because plaintiffs actions were taken pursuant to the remedial provisions of the Consent Decree and the IRB Rules. The IRB investigated allegations of misconduct within Local 107 in accordance with provisions of the Consent Decree and the IRB Rules which state that “[t]he IRB shall investigate any allegations of corruption in the IBT----”
 
 Id.
 
 at 605 (Rule H.2); see Consent Decree, ¶ G(a). The IRB referred its report regarding this investigation, as well as its recommendation that Local 107 be placed in trusteeship, pursuant to procedures set forth in both the Consent Decree and the IRB Rules.
 
 IRB Rules Decision,
 
 829 F.Supp. at 606 (Rules 1.1,1.4); Consent Decree, ¶¶ G(d)-(e). President Carey, as the IBT entity to which the IBT referred the Local 107 matter, imposed the trusteeship on Local 107 in order to comply with the requirement that “[u]pon referral, the IBT entity to which a matter is referred shall promptly undertake whatever action is appropriate under the circumstances to resolve the referred matter, as provided by the IBT Constitution, applicable law, and [the IRB] Rules.”
 
 IRB Rules Decision,
 
 829 F.Supp. at 606 (Rule 1.5);
 
 see
 
 Consent Decree, ¶ G(e). Because the actions taken by both the IRB and IBT with respect to Local 107 in this case arose from duties imposed upon the two entities by the Consent Decree and the IRB Rules, this Court finds that this case arises under the Consent Decree.
 

 This case also arises under the Consent Decree because the IRB retains continuing supervisory authority over the actions taken by the IBT with respect to Local 107, pursuant to the Consent Decree and the IRB Rules. Both the Consent Decree and the IRB Rules clearly state that “[t]he IRB shall monitor all matters that it has referred for action,” and “may also direct the Chief Investigator to ensure that the IBT entity resolves a referred matter in a lawful, responsible, and timely manner.”
 
 IRB Rules Decision,
 
 829 F.Supp. at 606 (Rule 1.5); Consent Decree, ¶ G(f). Furthermore, in the event that the IRB “determines, in its sole judgment, that a matter is not being or has not been pursued and decided by the IBT entity to which the matter has been referred in a lawful, responsible, and timely manner, or that the resolution proposed by the relevant IBT entity is inadequate under the circumstances,”
 
 IRB Rules Decision,
 
 829 F.Supp. at 606 (Rule 1.7); Consent Decree, ¶ G(f), the IRB may “take whatever steps are appropriate to ensure proper implementation” of the matter, including “the authority to seek enforcement of its decision from this Court.”
 
 IRB Rules Decision,
 
 829 F.Supp. at 606 (Rule K.2); Consent Decree, ¶ G(j). These rules demonstrate that any challenge to actions taken by the IBT in response to disciplinary referrals from the IRB implicates the IRB’s continuing supervisory authority over such referrals. They further impact the IBT’s ability to act within the two-week time frame imposed upon it by the IRB. Because Local 107’s refusal to cooperate with the IBT in this matter threatens the IBT’s ability to comply with the IRB’s referral regarding Local 107, this Court finds this case arises under the Consent Decree.
 

 Finally, this case arises under the Consent Decree because Local 107’s opposition to the IBT’s actions in this case challenge the authority of the officers appointed pursuant to the Consent Decree. To reiterate, Local 107 contends that the IBT’s imposition of a trusteeship over Local 107 violates the IBT Constitution. (Local 107 Memo at 12-15.) This claim, even if true, challenges the IRB’s mandate to “monitor all matters that it has referred for action,” and to “direct the Chief Investigator to ensure that the IBT entity resolves the referred matter in a lawful, responsible, and timely manner.”
 
 IRB Rules,
 
 829 F.Supp. at 605 (Rule 1.5); Consent Decree, ¶ G(f). Any action that challenges the ability of the IRB to perform the duties imposed upon it by the Consent Decree clearly implicates the Consent Decree.
 

 Moreover, Local 107 also opposes the IBT’s imposition of trusteeship over its affairs because it claims that the IBT decided to impose the trusteeship to retaliate against
 
 *286
 
 members of Local 107 who “are vocal and outspoken critics of Carey and his policies, and open supporters of Carey’s opponent in the [1996] election for General President of the IBT....” (Local 107 Complaint ¶25);
 
 see
 
 (IBT Application at 2); (IBT Memo at 10-15.) Under the Consent Decree, the Election Officer is charged with the “[complete supervision of all facets of the election process ... in order to prevent any possibility of fraud, coercion, intimidation, harassment, or threat in any of its varied forms.”
 
 United States v. International Bhd. of Teamsters [Election Rules Order],
 
 742 F.Supp. 94, 106 (S.D.N.Y.1990), affd, 931 F.2d 177 (2d Cir.1991). The
 
 Rules for the 1995-96 IBT International Union Delegate and Officer Election
 
 (“the Election Rules”), promulgated pursuant to the Consent Decree and approved by this Court, grant the Election Officer broad remedial power to address violations of the Election Rules or any other conduct preventing fair or honest elections.
 
 Id.
 
 at 96. Allegations that the IBT or its General President unlawfully attempted to impede the IBT election process or stifle an IBT member’s political advocacy necessarily implicate the jurisdiction of both the Election Officer and this Court.
 
 United States v. International Bhd. of Teamsters,
 
 896 F.Supp. 1339, 1345-48 (S.D.N.Y.1995);
 
 see
 
 Order & Memorandum,
 
 Powers v. International Bhd. of Teamsters,
 
 — F.Supp.-[1996 WL 673248] (D.Conn.1996) (transferring
 
 Powers
 
 litigation to this Court because an “allegation that defendants were motivated by a desire to stifle plaintiffs advocacy of a Carey rival and to preclude his participation in the 1996 elections ... implicates the authority of the Election Officer and hence is subject to the Consent Decree and Judge Edelstein’s Order.”);
 
 Tusino v. International Bhd. of Teamsters,
 
 No. 96-40056-NMG (D.Mass. April 10, 1996) (deferring to this Court’s jurisdiction under the All Writs Act and transferring
 
 Tusino
 
 litigation to this Court because plaintiffs complaint was “based on allegations that defendants have unlawfully attempted to impede the election campaigns of both plaintiff and candidate Hoffa----”). Because Local 107’s opposition to the trusteeship in the instant case alleges misconduct properly within the jurisdiction of the Election Officer, this Court finds that Local 107’s challenge to the IBT’s decision to impose a trusteeship over Local 107 arises under the Consent Decree.
 

 As previously explained, this Court found that its original All Writs Act Decision was necessary for three reasons. Each of these reasons compels this Court to enjoin the Local 107 Action. First, “there exists a significant risk of subjecting the Consent Decree to inconsistent interpretations and the Court Officers to inconsistent judgments,” which “would encourage forum shopping by subordinate entities seeking a sympathetic ruling,”
 
 All Writs Act Decision,
 
 728 F.Supp. at 1047. In fact, this risk has become reality with the instant case. In his decision to grant Local 107’s preliminary injunction, Judge Bartle relied upon case law and legal standards from the federal circuit that encompasses Pennsylvania — the Third Circuit.
 
 Local 107,
 
 935 F.Supp., at 601-02 (citing
 
 Hardy v. International Bhd. of Boilermakers,
 
 682 F.Supp. 1323 (E.D.Pa.1988)), at 603-04 (quoting
 
 AT & T Co. v. Winback and Conserve Prog., Inc.,
 
 42 F.3d 1421 (3d Cir. 1994),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995), and
 
 Regan v. Williams,
 
 1986 WL 8413 (W.D.Pa.1986)). This Court, on the other hand, has relied on Second Circuit precedent when resolving Consent Decree related disputes — including two recent cases involving emergency trusteeships imposed by the IBT on IBT locals.
 
 See United States v. International Bhd. of Teamsters,
 
 938 F.Supp. 1178 (S.D.N.Y.1996) (enjoining parties from litigating
 
 International Bhd. of Teamsters v. Local Union 714 of the IBT,
 
 96 Civ. 4903 (N.D.Ill.) (WRA) in any forum or jurisdiction other than the Southern District of New York and ordering the case transferred to the Southern District of New York);
 
 International Bhd. of Teamsters v. Local Union 745 of the IBT,
 
 938 F.Supp. 1186 (S.D.N.Y.1996). The need to prevent such inconsistent judgements, and the importance of ensuring that all Consent Decree cases are decided under the same law — that of the Second Circuit, demands
 
 *287
 
 that all Consent Decree litigation be brought in one Court — the Southern District of New York.
 

 Second, “widespread litigation across the country would subvert the reform bogging the Court officers down in a duplicative, harassing, and perhaps frivolous litigation.”
 
 Id.
 
 If the Local 107 Action remains in the Eastern District of Pennsylvania, the IBT and IRB will face prolonged litigation in a distant judicial district. Moreover, this Court recently has enjoined other suits challenging trusteeships imposed by the IBT on IBT locals that were pending in federal district courts in Texas and Chicago.
 
 United States v. IBT,
 
 938 F.Supp. 1178 (enjoining parties from litigating
 
 International Bhd. of Teamsters v. Local Union 714 of the IBT,
 
 96 Civ. 4903 (N.D.Ill.) (WRA) in any forum or jurisdiction other than the Southern District of New York and ordering the case transferred to the Southern District of New York);
 
 Local Union 745,
 
 938 F.Supp. 1186. The time and effort required to pursue countrywide litigation regarding the Consent Decree would hinder both the IBT and IRB’s ability to perform their respective disciplinary and remedial duties under the Consent Decree.
 

 Third, this Court’s All Writs Act Decision was designed to promote judicial economy, and judicial economy is best served by enjoining the parties in the Local 714 Case. “Because this Court has overseen the Consent Decree from its inception, this Court has thorough knowledge of the myriad decisions that make up the law of this case.”
 
 Barrow,
 
 896 F.Supp. at 1345. In fact, in recent days, this Court has resolved two almost identical disputes over the imposition of an emergency trusteeship by the IBT on an IBT Local in Texas.
 
 See United States v. IBT,
 
 938 F.Supp. 1178 (regarding
 
 International Bhd. of Teamsters v. Local Union 714 of the IBT,
 
 96 Civ. 4903 (N.D.Ikll.) (WRA));
 
 Local Union 745,
 
 938 F.Supp. 1186. Consequently, interests of judicial economy militate in favor of adjudicating the Local 107 Case in this Court.
 

 Because this Court finds that the Local 107 Action implicates the Consent Decree, this Court holds that: (1) the All Writs Act confers jurisdiction over this Court to adjudicate this ease; (2) this Court’s All Writs Act Decision requires that the Local 714 Case be adjudicated in this Court; and (3) this case should be transferred immediately to this Court.
 

 CONCLUSION
 

 IT IS HEREBY ORDERED THAT plaintiffs in
 
 International Bhd. of Teamsters, Local Union 107 v. International Bhd. of Teamsters,
 
 Civ.No. 96-5633 (E.DJPa.) (HB) are enjoined from pursuing that action in any court or forum in any jurisdiction except this Court.
 

 IT IS FURTHER ORDERED THAT the case
 
 International Bhd. of Teamsters, Local Union 107 v. International Bhd. of Teamsters,
 
 Civ.No. 96-5633 (E.D.Pa.) (HB) be transferred to this Court immediately.
 

 SO ORDERED.