UNITED STATES of America, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.

In re APPLICATION VIII BY THE INDEPENDENT ADMINISTRATOR.

No. 88 CIV. 4486 (DNE).

United States District Court, S.D. New York.

Feb. 27, 1990.

Frederick B. Lacey, Independent Administrator, Newark, N.J.

Charles M. Carberry, Investigations Officer, New York City and Robert W. Gaffey, of counsel.

Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., Paul J. Cambria, Jr., William M. Feigenbaum, Richard P. Weisbeck, Jr., of counsel, for Harold Friedman.

Law Offices of Moses Krislov, Co., Moses Krislov, Cleveland, Ohio, for Anthony Hughes.

Otto G. Obermaier, U.S. Atty. for the S.D.N.Y., Edward T. Ferguson, III, Asst. U.S. Atty., of counsel, for the U.S.

James T. Grady, Gen. Counsel, Intern. Brotherhood of Teamsters, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City (Jed S. Rakoff, Walter P. Laughlin,

Robert P. Knapp III, Vincent Esposito, Jr., of counsel), for the Intern. Brotherhood of Teamsters.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

This opinion emanates from the voluntary settlement in the action commenced by the plaintiffs United States of America (the "Government") against the defendants International Brotherhood of Teamsters (the "IBT") and the IBT's General Executive Board (the "GEB") embodied in the voluntary consent order entered March 14, 1989 (the "Consent Decree"). The remedial provisions in the Consent Decree provided for three Court-appointed officials, the Independent Administrator to oversee the all aspects of the Consent Decree, an Investigations Officer to bring charges against corrupt IBT members, and an Election Officer to oversee the electoral process leading up to and including the 1991 election for International Officers (collectively, the "Court Officers"). The ultimate goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through the election, prosecution, and other provisions.

### I. Background

This current dispute involves the unwillingness of the IBT to publish in the *International Teamster* the names of IBT members who face pending disciplinary charges filed against them by the Investigations Officer. The Independent Administrator seeks to include these names in his monthly Report to the Membership included in each issue. This disagreement has culminated in Application VIII of the Independent Administrator, which asked this Court to further interpret paragraph F.12.(E) of the Consent Decree ("¶ 12.(E)")—the provision that authorized the Independent Administrator to report to the membership in the *International Teamster*—as permitting such publication.

The specific problem which led to this Application stems from the IBT's refusal to print in full Report V of the Independent Administrator in the November, 1989 issue of the *International Teamster*. In that instance, the IBT declined to print the names of five IBT individuals against whom the Investigations Officer had filed charges. The Independent Administrator subsequently sought to publish the manes of those charged in his Report VII in the January issue of the *International Teamster*, and this effort was similarly refused by the IBT. This second negation spawned a series of exchanges between the Independent Administrator and the IBT which resulted in Application VIII.

In response to Application VIII, both the IBT and the Independent Administrator seek a series of definitive and modifying determinations. The Independent Administrator asks this Court to rule (1) that the IBT must publish in the *International Teamster* the names of those charged by the Investigations Officer; (2) that the IBT gain approval from the Independent Administrator for any editorial changes in his monthly reports to the membership; (3) that should the Independent Administrator disagree with the IBT's changes, the matter be brought before this Court by way of Application; (4) while such an Application may pend, the IBT shall refrain from publishing that issue of the *International Teamster*. For their part, the IBT seeks (1) this Court's approval of their refusal to print the names; and (2) a series of reinterpretations of this Court's earlier rulings—in an Order dated November 16, 1989 (the "November 16 Order") and the Opinion and Order dated January 17, 1990, 728 F.Supp. 1032 (the "January 17, 1990 Opinion")—that interpreted ¶ 12.(E).

### II. Discussion

#### A. Publication of Names in the International Teamster

The positions of the relevant parties regarding the core of this dispute—whether the IBT must publish the names of those charged by the Investigations Officer—are relatively clear. The IBT objects to the Independent Administrator's desire to publish these names in his monthly report lest the IBT be liable for the tort of libel. The

**504**

IBT further fears that the charged persons may be tainted as guilty before the cases are heard by the Independent Administrator.

The Government has supported the Independent Administrator's right to publish the charges, and refutes the IBT's claims of potential liability. The Government believes that the Independent Administrator's reports are quasi-judicial and privileged. The Government paints the IBT's refusal to print the names of charged persons as censorship, and violative of ¶ 12.(E), the November 19, 1989 Order, and the spirit and intent of the Consent Decree.

As a preliminary matter, this Court views the IBT's fears of tort liability as illusory. It must be clear to the IBT that publishing the names pursuant to an order of this Court leaves them with no alternative other than contempt of court should they fail to comply. The publication of names by the IBT will be done pursuant to order of this Court.

In earlier rulings on this matter, this Court has consistently interpreted ¶ 12.(E) as granting the Independent Administrator a broad mandate to communicate with the IBT membership. This Court cannot emphasize strongly enough the critical importance of regular, accurate, and comprehensive dissemination of information to the rank and file regarding the current status of the Consent Decree. The *International Teamster* is the only means for the Court Officers to directly reach the membership. Since the implementation of the Consent Decree, the monthly reports of the Independent Administrator have comprehensively summarized the ongoing implementation of the Consent Decree. The agressive response of the IBT to those reports testifies to the fact that these monthly communications are widely read and understood by the membership.

■ While in their papers the parties discuss a number of potential issues, the only relevant point of inquiry is whether ¶ 12.(E) of the Consent Decree should be interpreted to permit the dissemination of this information. Upon review of that provision, and the spirit and intent of the

Consent Decree, that specific request of the Independent Administrator is granted.

In this instance, this Court finds that the benefits to the IBT membership of receiving full information about the Consent Decree, specifically the names of those charged, is highly useful information to the membership. The rank and file are the ultimate interested parties in this remedial scheme, and they have a right to be informed of all the actions that happen in this litigation. To this end, this Court has previously found that under ¶ 12.(E), the Independent Administrator should have monthly communications with the membership, either in the *International Teamster*, or by direct mail. Further, under ¶ 12.(E), this Court has ordered that all orders of this Court be published in the *International Teamster*, so that the membership would be kept appraised of the current ongoing litigation. Ultimately, the rank and file have the most acute interest in being appraised of those IBT members charged by the Investigations Officer.

The names of those formally charged by the Investigations Officer are submitted to this Court, and filed to become part of the public record. Paragraph 12.(E) surely intends that the IBT members be kept appraised of matters wholly public and directly relating to the actions of the Court Officers. The Independent Administrator should report on those charged, those convicted, and those exonerated of the charges. In addition, the spirit and intent of the Consent Decree—to promote democratic, secret ballot elections, and rid the IBT of the hideous influence of organized crime—strongly favors informing the rank and file of which IBT members are facing charges.

*B. Revised Procedures for Editing the Monthly Report*

■ The Independent Administrator asks this Court to place the onus of editing portions his monthly reports onto the IBT, by requiring them to proceed by Application to this Court should they seek to edit his piece in the *International Teamster*. In the past, this Court has specified revised

procedures for complying with the Consent Decree, or modified some procedural mechanisms—such as funding or the filing of Applications—for efficiency and expediency. *See, e.g.,* 723 F.Supp. 203, 205. To devise a process which resolves disputes over the content of communications with the membership seems a reasonable exercise of this Court's authority.

The current anarchic confrontations that now surrounds dispute involving the Independent Administrator's obligations to report to the membership under ¶ 12.(E) shall be supplanted by the following process:

1.(a) Should the IBT object to the content of any communication from the Court Officers to be published in the monthly issue of the *International Teamster*, the IBT shall contact the Independent Administrator within twenty four hours after they receive the piece, note their objection, and attempt to resolve the conflict. From the date of the IBT's receipt of the piece in question, (the "publication receipt day"), the IBT and the Independent Administrator shall have two (2) business days to resolve the conflict (the "notification of publication dispute deadline").

(b) If the parties cannot settle the matter, the Independent Administrator shall file a letter with the Court, styled a "Notification of Publication Dispute Letter," indicating the existence of the dispute. This letter shall also be served by hand upon my chambers, the IBT's outside counsel, and the Government, and by hand or by telefax upon the IBT, all by no later than 5:00 on the day of the notification of publication dispute deadline.

2.(a) Should they still object, the IBT may file an Application to this Court submitting the question for judicial resolution, and that month's issue of the *International Teamster* shall be held in abeyance until this Court rules on the Application. This Application shall be on notice to the Court, the Independent Administrator, and the Government, and must be fully submitted within two (2) business days after the Independent Administrator files the Notification of Publication Dispute Letter.

(b) The Independent Administrator and Government shall have two (2) business days to respond from the date of full submission of the Application.

3. Absent an Application by the IBT as provided in 2.(a), the report shall be published as submitted by the Independent Administrator.

4. The timing provisions shall be calculated using the formula provided in Rule 6 of the Federal Rules of Civil Procedure.

This formal procedure should guarantee that disputes over the *International Teamster* be resolved in an expedient and fair manner. Further, the IBT must now shoulder the burden of demonstrating the inappropriateness of material for publication. All parties should remember this Court's view that the IBT membership must be kept fully appraised of the developments in this litigation.

As a final note, if significant disagreements over other forms of communication arise between the Court Officers to the IBT membership, the Independent Administrator may ask this Court to expand this procedure to include those correspondences.

*C.   Request for Modification of Earlier Rulings*

The IBT requests that this Court clarify three points concerning its earlier rulings interpreting ¶ 12.(E). Specifically, the IBT asks this Court to alter (1) its order which requires all orders to be published in the *International Teamster* to eliminate some, (2) its order that all opinions must be published unedited but in full, and (3) the Court's supposed ban on any IBT commentary on this Court's opinions.

This Court's rulings with respect to the publication of its orders in the *International Teamster* are crystalline. All orders are to be published in full. It would seem impossible to further clarify such a command.

■ The IBT requests that this Court identify which of its rulings should be published. The IBT points out that while this Court ordered all rulings of this Court to

be published in the *International Team-ster*, they feel some orders involve trivial or minor matters and are inappropriate for publication. This Court will not determine which of its pronouncements are suitable for publication since it would be impossible to choose to the satisfaction of all parties. Therefore this request must be denied. In the interests of completeness, the membership must be kept fully informed of all ongoings in this case.

The IBT also asks whether the January 17, 1990 Opinion and Order of this Court modifies the earlier November 16, 1989 Order to hold that the IBT need only publish the actual rulings, rather than the entire opinions. The January 17, 1990 Opinion in no way modifies the November 16, 1989 Order as the IBT asks.

Further, the IBT asks that this Court permit the IBT to edit out purely legal discussions, so as not to bore the members with what it feels are irrelevant discussions. While the Court understands that much of legal opinions may not innervate the IBT rank and file, it does provide a basis for understanding how the Court arrived at its decision. The many letters my chamber receives daily indicate that the membership gleans some real insight into what takes place in this case through these opinions. In addition, editing in no way assures that the opinions will be any more readable, understandable, or entertaining. Therefore, all orders of this Court shall be reproduced in full.

Finally, the IBT asks this Court to state whether its ruling in the November 16, 1989 Opinion precludes the IBT from commenting on this Court's opinions. I will now firmly state that the IBT is in no way barred from any commentary on any of my opinions in this case. As I said to General Counsel Grady on this subject at the hearing of October 13, 1989, "You can speak to your heart's content. Nobody is gagging you," October 13, 1989 Hearing, Transcript at 59, and that remains true now. The only limitation on the IBT's ability to comment on my rulings is my order that in reprinting the opinion, the IBT not intersperse the full republication with commentary. This in no way means the IBT cannot, in another section, reprint small segments of the opinions and comment in any way they like, but that in one section the opinions continue to be provided in full.[1]

### III. Conclusion

In response to Application VIII of the Independent Administrator, ¶ 12.(E) of the Consent Decree is hereby interpreted in accordance with the above rulings.

SO ORDERED.

---

1. In practice, this ruling specifically means that the IBT cannot disturb what has become this final section of the *International Teamster,* styled "Rulings of Judge Edelstein." The IBT is free to republish any portion in another section, such as the monthly letter from Mr. Grady to Mr. McCarthy, and then comment on it. In that section, the IBT may comment in any way they see fit. Should Mr. Grady want to reproduce a sentence and even point out a grammatical mistake, he may do so.