**UNITED STATES of America, Plaintiffs,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.**

**No. 88 Civ. 4486(DNE).**

United States District Court, S.D. New York.

Oct. 14, 1997.

Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano (Theodore M. Lieverman, of counsel), Haddonfield, NJ, for Election Officer, Barbara Zack Quindel.

London & Mead (Christopher B. Mead, of counsel), Washington, DC, for Jere B. Nash III.

Mary Jo White, U.S. Atty., S.D. New York (Karen B. Konigsberg, Asst. U.S. Atty, of counsel), New York City, for Plaintiff U.S.

Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P. (Edward J.M. Little, of counsel), New York City, for Defendant Intern. Broth. of Teamsters.

Goldman & Hafetz (Frederick P. Hafetz, of counsel), New York City, for Cohen, Weiss & Simon.

*OPINION & ORDER*

EDELSTEIN, District Judge.

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia,* the International Brotherhood of Teamsters ("IBT") and the IBT's General Executive Board. The settlement is embodied in the

voluntary consent order entered March 14, 1989 ("Consent Decree"). The goal of the Consent Decree is to rid the IBT of the hideous influence of organized crime through a two-phased implementation of the Consent Decree's various remedial provisions. In the first phase of the Consent Decree, these provisions provided for three court-appointed officers: the Independent Administrator to oversee the Consent Decree's provisions; the Investigations Officer to bring charges against corrupt IBT members; and the Election Officer to supervise the electoral process that led up to and including the 1991 election for IBT International Union Office. In the second phase of the Consent Decree, the IA was replaced by a three-member Independent Review Board ("IRB").

The Consent Decree, during its more than eight-year history, has generated an enormous amount of litigation that has required this Court to issue numerous opinions. In one such opinion, this Court, pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a), enjoined "all local unions, joint councils, area conferences, and other entities subordinate to or affiliated with the IBT, and any members, officers, representatives, agents and employees of the IBT or any such IBT affiliated entity, from filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of any of the court officers appointed by this Court pursuant to the Consent Order in this action, in any court or forum in any jurisdiction except this Court[.]" December 15, 1989, Order at 3; *see also United States v. International Bhd. of Teamsters [ All Writs Decision ]*, 728 F.Supp. 1032 (S.D.N.Y.), *modification denied*, 735 F.Supp. 502 (S.D.N.Y.), *aff'd*, 907 F.2d 277 (2d Cir.1990).

The instant case is an action to enjoin Defendants from: (1) refusing to deliver and return all IBT Local Union 918 ("Local 918") property in their possession, custody or control to Eugene P. Maney as Trustee of Local 918; (2) representing themselves as authorized officers and/or representatives of Local 918, unless so authorized by the Trustee; (3) interfering with the conduct of the emergency trusteeship; (4) refusing to provide a complete accounting of the financial condition of Local 918 and its funds to the Trustee, and refusing to provide all financial records and explanations for all receipts, disbursements, and financial transactions of any kind by Local 918; (5) destroying, removing, secreting, or altering any property of Local 918; and (6) litigating the action known as *Local 918, et al. v. IBT*, 97 Civ. 5708(CPS) (E.D.N.Y.) or any other action or proceeding challenging or relating to the Trusteeship of Local 918 in any court or forum other than this Court.

## FACTS

Pursuant to its authority under the Consent Decree the IRB conducted an investigation of Local 918. On September 16, 1997, upon completion of the investigation, the IRB issued the IRB Trusteeship Recommendation Concerning Local 918 ("IRB Report") to the IBT. The IRB Report charged that the Executive Board of Local 918 "has engaged in a pattern of conduct which violates the IBT Constitution and prevents the membership from obtaining information and exercising their rights." IRB Report, at 1. Specifically, the IRB found that: (1) the Executive Board of Local 918 failed to adopt and operate under Bylaws approved by its members and the international as required by the IBT Constitution; (2) the leadership failed to regularly hold membership meetings and, from July 1992 to the present, held only eight general membership meetings at which a quorum of 15 members were met; (3) the Executive Board entered into questionable and improper financial arrangements, and had granted themselves salary increases, bonuses, and benefits without first gaining authorization from the membership as well as failing to reimburse the Local for improperly received fees for attending Executive Board meetings; and (4) Local 918's officers negotiated sham collective bargaining agreements with employers who were permitted to be members of the Local. In conclusion, the IRB recommended the imposition of a Trusteeship over Local 918 and required General President Carey ("Carey") to report to the IRB any actions taken or planned within two weeks. (Letter from John J. Cronin, Jr. to Ron Carey of 9/16/97).

On October 1, 1997, following receipt of the IRB Report, Carey issued a Notice ("IBT Trusteeship Notice") to the officers and members of Local 918 imposing an emergency trusteeship over Local 918. The emergency trusteeship was effective as of October 2, 1997, and Eugene Maney ("Maney") was appointed to serve as Temporary Trustee. IBT Trusteeship Notice at 1–2.

Maney arrived at the offices of Local 918 on October 2, 1997, to assert control over the affairs of the Local. The building in which the offices are located was locked, and entrance by Maney was obstructed and refused by the Local's officers and agents. That same day, Local 918 initiated an action in the Eastern District of New York seeking a Temporary Restraining Order ("TRO") to enjoin the imposition of the emergency trusteeship. *Local 918, et al. v. International Bhd. of Teamsters,* 97 Civ. 5708(CPS) (E.D.N.Y.).

On October 3, 1997, in response to these actions, Plaintiffs by an Order to Show Cause moved this Court for a TRO to enjoin Defendants from interfering with the conduct of the emergency trusteeship over Local 918 and from litigating this case in any forum other than this Court. After conferring with this Court, Judge Patterson, who was sitting in Part I, signed the TRO and Order to Show Cause, and scheduled a hearing before this Court for October 7, 1997.

Less than three hours prior to the October 7, 1997 hearing, this Court received papers from Defendants submitted in opposition to the Plaintiffs' motion for a preliminary injunction. Accordingly, this Court found it necessary to adjourn the hearing so that Defendants' papers could be given consideration and to provide Plaintiffs an opportunity to respond.

Having reviewed the arguments advanced by each party in its respective submissions to this Court, this Court finds that a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 should issue.

## DISCUSSION

In granting Plaintiffs' motion for a preliminary injunction pursuant to Rule 65, this Court considered four issues: (1) whether jurisdiction and venue over the instant litigation were proper in this Court; (2) the applicability of the All Writs Act to the instant dispute; (3) the standard for issuing a preliminary injunction to enforce an emergency trusteeship under relevant Second Circuit case law; and (4) the propriety of the General President's imposition of the emergency trusteeship over Local 918. For the following reasons, this Court found that: (1) this Court had jurisdiction over the instant litigation; (2) Carey properly imposed an emergency trusteeship on Local 918 according to the Second Circuit's standard for issuing a preliminary injunction to enforce an emergency trusteeship on a local union; and (3) the All Writs Act demands that the parties be enjoined from commencing or pursuing any legal action, other than the instant action before this Court, that challenges, impedes, or seeks review of or relief from, or seeks to resolve, prevent, or delay, any act of the IBT or Eugene P. Maney or his designee with respect to the trusteeship imposed on Local 918.

### I. *Jurisdiction & Venue*

This Court finds the issue of jurisdiction in this case very similar to those underlying two cases decided by this Court concerning IBT Local 745 in Dallas, Texas, and IBT Local 714 in Chicago, Illinois. Both cases were affirmed by the Second Circuit in March 1997, in *International Bhd. Of Teamsters v. Local 714 and Local 745,* 109 F.3d 846 (2d Cir.1997). In both cases, Teamster Locals challenged the imposition of trusteeships over their respective Locals by President Carey upon recommendation of the IRB, and in both cases this Court held that "any action that challenges the ability of the IRB to perform the duties imposed upon it by the Consent Decree clearly implicates the Consent Decree." *IBT v. Local 745,* 938 F.Supp. 1186, 1192 (S.D.N.Y.), *aff'd,* 109 F.3d 846 (2d Cir.1997). In affirming this holding, the Second Circuit held that this Court properly exercised Consent Decree Jurisdiction over a case where the "substance" or "findings" of the IRB reports were challenged. *IBT v. Local 714 and Local 745,* 109 F.3d 846, 849 (2d Cir.1997).

This Court finds that the Local 918 action clearly challenges both the substance and the findings of the IRB report, and thus affect the IRB's ability to perform the duties imposed upon it by the Consent Decree. Furthermore, it is clear that actions taken by the IBT relating to recommendations or investigations by the IRB implicate the Consent Decree. *See IBT v. Local 745,* 938 F.Supp. at 1191; *aff'd,* 109 F.3d at 849. Thus Defendants' claims implicate both the Consent Decree and this Court's continuing jurisdiction over it.

This Court also finds that venue in this case properly lies in the Southern District of New York. The All Writs Act, 28 U.S.C. § 1651, "empowers courts to issue extraordinary writs 'as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued.' " *United States v. International Bhd. Of Teamsters [All Writs Act Affirmance],* 907 F.2d 277, 280 (2d Cir.1990) (quoting *United States v. New York Tel.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977)). This Court and the Second Circuit have repeatedly invoked the All Writs Act to support this Court's power to order that all Consent Decree litigation be maintained in the Southern District of New York. *Id.* at 280–81; *IBT v. Local Union 745,* 938 F.Supp. 1186, 1192 (S.D.N.Y.), *aff'd,* 109 F.3d 846 (2d Cir.1997); Amended Opinion & Order, *IBT v. Local 714,* 938 F.Supp. 1174, 1178 (S.D.N.Y.1996), *aff'd,* 109 F.3d 846 (2d Cir.1997).

Although Defendants filed a complaint in the Eastern District of New York prior to Plaintiffs' commencement of this action, Defendants have not objected to the venue or this Court's jurisdiction over this matter. Accordingly, this Court finds that: (1) the Local 918 case falls within this Court's jurisdiction and venue properly lies in the Southern District of New York under both the Consent Decree and the All Writs Act; and (2) that litigation of the Local 918 case in any forum other than this Court would interfere with this Court's jurisdiction.

## II. *Issuance of Preliminary Injunction*

 "Ordinarily, a party seeking a preliminary injunction must meet the burden established by the now familiar test: (1) irreparable harm should injunctive relief not be granted; and (2) either likelihood of success on the merits or sufficiently serious factual questions making a fair ground for litigation with a balance of hardships tipping in the movant's favor." *International Bhd. of Teamsters v. Local 810,* 19 F.3d 786, 789 (2d Cir.1994) (citations omitted). However, the Second Circuit has held that the "scope of the examination by the district court is limited" in the labor trusteeship context by the statutory scheme governing labor trusteeships. *Id.* at 789.

In the *Local 810* case, the Court held that

[o]nce the parent organization demonstrates likelihood of success on the merits of its claim of right to impose the trusteeship and irreparable harm if it is not, then ... the burden shifts to the local to show that the trusteeship was not imposed in accordance with the procedural requirements of the union constitution or that the parent organization acted without good faith or for a statutorily unauthorized purpose.

*Local 810,* 19 F.3d, at 790–91. Furthermore, the Court noted that

where a parent labor organization's constitution allows imposition of temporary trusteeship in the case of an emergency, and the proper procedural requirements are met, a federal court may not invalidate that trusteeship, unless the local is able to show by clear and convincing evidence that the trusteeship was not established in good faith or was for a purpose not authorized by the Reporting and Disclosure Act. If the constitution provides for such a procedure, the statutory presumption of validity arises even where a temporary trusteeship is imposed prior to a union hearing.

*Id.* at 791. "Because the IBT sought to impose a Trusteeship on Local 918 without holding a prior union hearing, the IBT had the burden of demonstrating that the purpose for imposing the temporary trusteeship was authorized by the IBT Constitution, and that the trusteeship should be imposed without a prior union hearing." *International Bhd. of Teamsters v. Local 745,* 938 F.Supp.

1186, 1194 (S.D.N.Y.), *aff'd*, 109 F.3d 846 (2d Cir.1997).

### A. *Likelihood of Success on the Merits*

Article VI, Section 5(a) of the IBT Constitution gives the General President the authority to impose a trusteeship over a local union where the "General President believes that such action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements, or other duties of bargaining representatives, restoring democratic procedures or preventing any action which is disruptive of, or interferes with the performance of obligations of other members or Local Unions under collective bargaining agreements, or otherwise carrying out legitimate objectives of the subordinate body ." IBT Const., Art. VI, § 5(a). In addition, Article VI Section 5(a) empowers the General President to impose a temporary trusteeship prior to an internal union hearing, where "in the judgment of the General President, an emergency situation exists with the Local Union." *Id.*

Though the IBT Constitution does not define "emergency," the Second Circuit has explained that

> [i]n order to comply with the procedural mandates of its constitution, the general president must have had a good faith belief that a situation within a local was developing suddenly and unexpectedly or through an unforeseen combination of circumstances; that the situation was one implicating corruption, financial malpractice or undemocratic procedures; and that the circumstances demanded immediate action.

*Local 810,* 19 F.3d at 793. For the following reasons, this Court finds that Carey had a basis to believe in good faith that it was necessary to impose an emergency trusteeship on Local 918.

Carey received a report from the IRB that alleges on-going financial malpractice, undemocratic procedures, and improper collective bargaining agreements, and recommends the imposition of a trusteeship. First, the IRB Report states that the Executive Board of Local 918 failed to adopt and operate under Bylaws approved by its members and the international as required. The IRB Report found that "[Daniel] Lombardozzi [the president of Local 918] falsely represented that [the] Bylaws had been properly approved by the Executive Board and the Union membership." IRB Report at 12. Furthermore, the IRB Report stated that "[t]he false representations by Local 918's President, Lombardozzi ... establishes that the Local's officers are prepared to deceive the IBT concerning material facts relating to compliance with Constitutional and Model Bylaws provisions designed to protect members." *Id.*

Second, the IRB found that the officers of Local 918 failed to hold monthly membership meetings as required by the IBT Constitution. The IRB's investigation found that Local 918 met its "quorum requirement twice in 1995, four times in 1996, and not at all in 1997." *Id.* at 13. The IRB Report stated that "[f]rom July 1992 to the present, the Local has conducted only eight general membership meetings (out of a possible forty-five) at which a quorum was met." *Id.* The IRB Report indicated that "if the Local did not include its officers [in the count], it would have met a quorum at only three of these eight meetings." *Id.* Moreover, the IRB Report explained that at several of these eight meetings, matters beneficial to the Executive Board, such as officer nominations, Christmas bonuses, and wage increases were transacted. *Id.* at 13–14.

Third, the IRB Report indicated that the Executive Board's adoption and implementation of the Cost Sharing Agreement ("the Agreement") "raises questions under ERISA." *Id.* at 19. The IRB Report pointed out that "[p]ursuant to Title 29, United States Code, Section 1108(c)(2), a full-time officer of a union who is a fiduciary of a benefit plan in which his members participate is prohibited from receiving compensation, other than reimbursed expenses, from such benefit plan." *Id.* at 19–20. Under the Agreement, the IRB found that the allocation of funds "disguises the payment of salary from the benefit funds to officers of the Local ... who were also fiduciaries of the benefit plan." *Id.* at 20. Furthermore, the IRB Report charged that the "Agreement was never read or distributed to the membership

at any time," and "[I]t does not appear that the members ever approved the Agreement." *Id.* at 15.

Fourth, the IRB reported that the Executive Board had granted salary increases, bonuses, and benefits to officers and employees of Local 918 without the authority to do so under any approved Bylaws. In addition, the Executive Board members had been paid fifty dollars for attending Executive Board meetings. On October 10, 1995, Carey issued a policy statement stating that full-time union officers may receive fees for attending Executive Board meetings only if it was specifically provided for in the Local Bylaws or approved by the Local's members. Under this policy, if fees were taken contrary to Bylaw provisions, such fees should be returned to the Local. *Id.* at 21. The IRB found that such fees paid to Local 918 officers have not been reimbursed to the Local. *Id.* at 22.

Fifth, the IRB alleged that "Local 918 entered into a series of fraudulent collective bargaining agreements." *Id.* at 33. The IRB asserted that "wages were specified, but those terms were never intended to be and were not enforced." *Id.* Furthermore, the IRB Report stated that the Local allowed employers to be members and that "[b]y allowing company owners to become members ... with full voting rights, it appears that the Local violated the Bylaws under which it claimed to be operating." *Id.*

The IRB Report and Exhibits clearly provided General President Carey with substantial reason to believe that an emergency trusteeship was warranted at Local 918. The IRB Report details "fresh" allegations of "ongoing" improprieties implicating corruption and demanding immediate action. *See International Bhd. Of Teamsters v. Local 714 and 745,* 109 F.3d 846, 850 (2d Cir.1997). In addition, the IRB Report required Carey to report within two weeks on "the actions planned or taken." (Letter from Cronin to Carey of 9/16/97). The IRB could have ordered Carey to take action within a period of up to ninety days. Thus the IRB Report, Exhibits and accompanying letter provided Carey with a sufficient basis to believe in good faith that an emergency situation exist-

ed at Local 918 requiring the immediate imposition of a trusteeship. *See Local 705,* 827 F.Supp. at 515 (stating that "[t]he IRB report and the IRB rules requiring prompt action furnish the basis for Carey's judgment and the emergency trustee"). Because IBT's papers and supporting documents demonstrate that Carey had a basis to believe in good faith that an emergency situation existed within Local 918, this Court "did not need *to undertake a full evidentiary hearing as to whether an emergency in fact existed, as* IBT's claim of right under Article VI § 5(a) of the constitution was triggered upon the General President's good faith belief that such a situation existed." *Local 810,* 19 F.3d at 793.

## B. *Irreparable Harm*

This Court also finds that the IBT has satisfied its burden for irreparable harm. Defendants' papers do not challenge the issue of irreparable harm and the IBT has demonstrated that it will suffer irreparable injury if the Defendants are not enjoined in the instant case. Specifically, the IBT would suffer irreparable harm were the temporary emergency trusteeship not imposed upon its Local because such allegations of financial malpractice and undemocratic procedures "severely test the allegiance of union members to their chosen leaders." *Local 810,* 19 F.3d at 794. This is particularly serious in light of the union's history of corruption.

Furthermore, if the alleged conduct of the officers of Local 918 continued, the IBT's reputation will be damaged. The Second Circuit has found that harm to a union's reputation constitutes irreparable injury. *IBT v. Local 810,* 19 F.3d at 794. In light of this Court's persistent efforts to enforce the Consent Decree and its goal of eradicating corruption within the IBT this Court finds that such harm constitutes irreparable injury in the instant case, and thus the IBT has satisfied its burden.

Because Plaintiffs have met their burden, the validity of the IBT's actions is presumed. *Local 810,* 19 F.3d at 794. In order to rebut this presumption, Local 918 must demonstrate by clear and convincing evidence that Carey: (1) did not impose the trusteeship on

Local 918 in accordance with the procedural requirements of the IBT Constitution; (2) that his determination that an emergency existed at Local 918 was made in bad faith; or (3) that the purpose for which Carey placed the trusteeship over Local 918 was not authorized by Section 302 of the LMRDA. *Id.*

Defendants argue that because of the IRB's prior determination, as communicated to Carey, that the evidence warrants the imposition of a trusteeship, Carey "could not have acted independently and impartially in reaching his own decision to place the Local in trusteeship." Memorandum of Law in Opposition to a Temporary Restraining Order ("Def. mem."), at 20. Their argument suggests that Carey acted contrary to the procedural requirements of the IBT Constitution, because he acted in bad faith in his determination that an emergency existed at Local 918. Defendants argue that Carey rubber-stamped the IRB's determinations and thus "the outcome of the internal union process on referral from the IRB is pre-ordained." *Id.* However, Defendants fail to provide any evidence that Carey acted in such a manner. Instead Defendants rely on their assertion that "[n]o nefarious or sinister scheme but simple human nature dictates that impartiality cannot be achieved where the charges and sanction are both recommended by the IRB." *Id.* at 22. These allegations are "conclusory accusations and suppositions," and thus do not satisfy the clear and convincing burden Defendants must meet in order to show bad faith on the part of Carey. *Local 810,* 19 F.3d at 794. Therefore, Defendants' arguments with respect to the first two prongs of the *Local 810* standard are without merit.

Additionally, Defendants failed to argue the third prong of the *Local 810* standard, *i.e.,* that the purpose for which Carey placed the emergency trusteeship over Local 918 was not authorized by the LMRDA. Instead, Defendants assert that the combination of prosecutorial and adjudicative functions in one body, the IRE, "fails as a matter of practice and common sense to provide an impartial forum ... to resolve charges." Def.Mem. at 20. This argument ignores well

established law that such functions may be combined without violating notions of fairness and due process. *See Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975) (holding that bias in administrative proceeding is not established merely by conferring investigative and adjudicative powers in the same individuals); *American Telephone and Telegraph Co. v. FCC,* 449 F.2d 439, 455 (2d Cir.1971) (noting that "case law generally rejects the proposition that the combination of judicial and adversary functions in one agency is a denial of due process.").

Moreover, Local 918 apparently seeks to rewrite the IRB Rules to require the IRB to hold hearings prior to the issuance of a recommendation or limit the IRB's referral to the union to recommending charges without proposed sanctions. Def.Mem. at 21. These proposals are entirely irrelevant to the matters at issue in this proceeding. More importantly, Local 918 has no standing to raise any objections to the IRB Rules or to seek any modification of them.

The Rules for the IRB were approved by this Court and by the Second Circuit in proceedings in which the parties to the Consent Decree, the IBT and the United States, fully litigated the issues. *United States v. IBT ("IRB Rules Opinion"),* 803 F.Supp. 761 (S.D.N.Y.1992), *aff'd in part, rev'd in part,* 998 F.2d 1101 (2d Cir.1993). Local 918 is not a Party to the Consent Decree and thus has no standing to challenge or seek modifications of the IRB Rules. It is well established that the IBT adequately represents its members and its local unions in connection with Consent Decree litigation, and Defendants have offered no evidence that its interests were not adequately represented. *United States v. IBT et al. ("All Writs Order"),* 728 F.Supp. 1032, 1050 (S.D.N.Y.), *aff'd,* 907 F.2d 277 (2d Cir.1990) ("The International IBT represented what interests the subordinate may have had in the subject matter of the underlying litigation, and the embodiment of the settlement of that litigation—the Consent Decree—reflects such representations."); *United States v. IBT et al. ("Friedman & Hughes"),* 725 F.Supp. 162, 168, (S.D.N.Y. 1989) ("The International IBT, as the elective

and administrative leadership of the IBT membership, litigated the suit and entered into the Consent Decree as the representative of its membership and considered the Consent Decree consonant with its members' interests."), *aff'd,* 905 F.2d 610, 622–23 (2d Cir.1990); *United States v. IBT ("Convention Opinion"),* 764 F.Supp. 787, 791 (S.D.N.Y.) (denying motion to intervene by two groups of IBT members because they could not establish that their interests were not adequately represented by the IBT), *aff'd,* 940 F.2d 648 (2d Cir.) *cert. denied,* 502 U.S. 819, 112 S.Ct. 76, 116 L.Ed.2d 50 (1991).

## CONCLUSION

As previously discussed, this Court finds that Carey acted in accordance with the procedural requirements set forth in the IBT Constitution for placing an IBT local in trusteeship, and this Court finds that Carey had a basis for believing in good faith that an emergency existed at Local 918 justifying the imposition of a trusteeship prior to a union hearing. Accordingly this Court finds no procedural impropriety that would support Local 918's resistance to IBT's imposition of the temporary trusteeship.

Furthermore, Defendants failed to show that "Carey acted contrary to the union's best interests, acted in his own self-interest, or that his actions were so outrageous or unconscionable that even if they were in the best interests of the union, they would constitute bad faith." *Local 810,* 19 F.3d at 794. Thus this Court finds that Local 918 has failed to rebut the presumption of validity of the IBT's imposition of an emergency trusteeship over Local 918 by clear and convincing evidence.

IT IS HEREBY ORDERED THAT Plaintiffs' IBT's motion for a preliminary injunction is GRANTED.

IT IS FURTHER ORDERED THAT Local Union 918 of the International Brotherhood of Teamsters and its officers, employees, agents, attorneys, or other representatives are enjoined from:

1. Refusing to deliver and return immediately all Local 918 property, moneys, funds, books, records and assets of any kind in their possession, custody or control, wherever situated, to Eugene P. Maney as Trustee of Local 918, or his designee;

2. Representing themselves as the authorized officers and/or representatives of Local 918, unless so authorized by the Trustee or his designee;

3. Interfering in any manner with the conduct of the emergency trusteeship by Eugene P. Maney or his designee;

4. Refusing to provide a complete accounting of the financial condition of Local 918 and its funds to Eugene P. Maney or his designee, and refusing to provide any and all financial records and explanations for all receipts, disbursements, and financial transactions of any kind by Local 918 or related to Local 918;

5. Destroying, removing, secreting, or altering any property, moneys or records, including but not limited to, the financial records of Local 918 or any financial records relating to Local 918; and

6. Litigating the action *Local 918, et al. v. International Bhd. of Teamsters, et al.,* 97 Civ. 5708(CPS) (E.D.N.Y.) or any other action or proceeding challenging or relating to the Trusteeship of Local 918 in any court or forum other than this Court.

IT IS FURTHER ORDERED THAT in accordance with Federal Rule of Civil Procedure 65(c), the IBT post security in the amount of $50,000.

SO ORDERED.