167 F.3d 113
 160 L.R.R.M. (BNA) 2385, 137 Lab.Cas. P 10,353
 UNITED STATES of America, Plaintiff-Appellee,
Charles M. Carberry, Chief Investigator, Appellee,
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers Of America, AFL-CIO, Commission of
La Cosa Nostra, Anthony Salerno, a/k/a Fat Tony, Matthew
Ianniello, a/k/a Matty the Horse, Anthony Provenzano, a/k/a
Tony Pro, Nunzio Provenzano, a/k/a Nunzi Pro, Anthony
Corallo, a/k/a Tony Ducks, Salvatore Santoro, a/k/a Tom Mix,
Christopher Furnari, Sr., a/k/a Christie Tick, Frank Manzo,
Carmine Persico, a/k/a Junior, a/k/a The Snake, Gennaro
Langella, a/k/a Gerry Lang, Philip Rastelli, a/k/a Rusty,
Nicholas Marangello, a/k/a Nicky Glasses, Joseph Massino,
a/k/a Joey Messina, Anthony Ficarotta, a/k/a Figgy, Eugene
Boffa, Sr., Francis Sheeran, Milton Rockman, a/k/a Maishe,
John Tronolone, a/k/a Peanuts, JOSEPH John Aiuppa, a/k/a
Joey O'Brien, a/k/a Joe Doves, a/k/a Joey Aiuppa, John
Philip Cerone, a/k/a Jackie the Lackie, a/k/a Jackie Cerone,
Joseph Lombardo, a/k/a Joey the Clown, Angelo LaPietra,
a/k/a Nutcracker, Frank Balistrieri, a/k/a Mr. B, Carl
Angelo DeLuna, a/k/a Toughy, Carl Civella, a/k/a Corky,
Anthony Thomas Civella, a/k/a Tony Ripe, General Executive
Board, International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, Jackie Presser, General
President, Joseph Trerotola, a/k/a Joe T, First Vice
President, Robert Holmes, Sr., Second Vice President,
William J. McCarthy, Third Vice President, Joseph W. Morgan,
Fourth Vice President, Edward M. Lawson, Fifth Vice
President, Arnold Weinmeister, Sixth Vice President, Maurice
R. Schurr, Eighth Vice President, Donald Peters, Ninth Vice
President, Walter J. Shea, Tenth Vice President, Harold
Friedman, Eleventh Vice President, Jack D. Cox, Twelfth Vice
President, Don L. West, Thirteenth Vice President, Michael
J. Riley, Fourteenth Vice President, Theodore Cozza,
Fifteenth Vice President, Daniel Ligurotis, Sixteenth Vice
President, Salvatore Provenzano, a/k/a Sammy Pro, Former
Vice President, Weldon Mathis, General Secretary-Treasurer,
John H. Cleveland, Seventh Vice President, Defendants,
v.
Glenn BOGGIA, Appellant.
 Docket No. 98-6106.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 10, 1998.
Decided Feb. 4, 1999.
 
 Andrew W. Schilling, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney, New York, New York, on the brief), for Plaintiff-Appellee United States of America.
 Dennis E. Milton, New York, New York (Charles M. Carberry, Chief Investigator, Jones Day Reavis & Pogue, New York, New York, on the brief), for Appellee Charles M. Carberry.
 Robert A. Culp, New York, New York (Law Offices Laura A. Brevetti, New York, New York, on the brief), for Appellant.
 Before: KEARSE and STRAUB, Circuit Judges, and MURTHA, Chief District Judge.*
 KEARSE, Circuit Judge:
 
 
 1
 Glenn Boggia appeals from an order of the United States District Court for the Southern District of New York, David N. Edelstein, Judge, adopting a determination of the Independent Review Board ("IRB") for the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("IBT" or the "Union"), which upheld an IBT decision permanently expelling Boggia from Union membership and barring him from receiving compensation or nonvested benefits from any IBT affiliate on the ground that he had brought the Union into disrepute by accepting a bribe in exchange for promising labor peace. On appeal, Boggia contends that the Union's hearing procedures were unfair, that the evidence was insufficient to support the finding that he accepted a bribe, and that the sanction of permanent expulsion was unduly severe. Finding no merit in his contentions, we affirm.
 
 I. BACKGROUND
 
 2
 This appeal arises out of IBT disciplinary proceedings conducted pursuant to procedures established by the 1989 consent decree entered into in settlement of civil racketeering charges brought by the government against the IBT in connection with the Union's long history of corruption and involvement with organized crime (the "Consent Decree"), see, e.g., United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("Election Rules Order"), 931 F.2d 177, 180-81 (2d Cir.1991); United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("Friedman & Hughes"), 905 F.2d 610, 612-13 (2d Cir.1990), as those procedures have been amended, see, e.g., United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("IBT Rules"), 803 F.Supp. 761, 802-05 (S.D.N.Y.1992), aff'd in part and rev'd in part, 998 F.2d 1101, 1107-11 (2d Cir.1993), on remand, 829 F.Supp. 602, 605-08 (S.D.N.Y.1993), familiarity with which is assumed.
 
 A. The Proceedings Against Boggia
 
 3
 Boggia had been a member of IBT Local 282 since 1974 and had frequently been an "On-site Steward" since 1976. In March 1996, the Corruption Officer of Local 282 sent the IRB a letter, reporting that he had received information from the Federal Bureau of Investigation ("FBI") that Boggia had participated in a payoff scheme in which he demanded $1,250 from a person who was an FBI informant. The letter stated that the bribe had been witnessed by an FBI agent and captured on audio tape.
 
 
 4
 In August 1996, the IRB submitted a detailed Investigative Report on these allegations ("IRB Report" or "Report") to the Trustee for Local 282 ("Trustee" or "Local 282 Trustee"). According to the Report, on April 7, 1992, an FBI informant operating under the alias "Frank Falco" was posing as a company representative for a construction site in Queens, New York. On that morning, FBI agents gave him, inter alia, an envelope containing $1,250 in cash and concealed a tape-recording device on his person. Thereafter, observed by an FBI agent, Falco proceeded to meet with Boggia in the parking lot of a restaurant. During the tape-recorded conversation, Falco gave Boggia the envelope containing the $1,250 in exchange for which Boggia promised to prevent labor disruptions on Falco's construction job. Attached to the IRB Report were the FBI tape and a transcript of the tape.
 
 
 5
 The Report also stated that "[t]he position of On-site Steward has been dominated by organized crime for decades." (IRB Report at 2 n. 3) (citing, inter alia, a 1987 New York State Organized Crime Task Force interim report, see id., as well as information obtained in 1991 from "self-admitted organized crime member Salvatore Gravano," id. n. 2, who had become a cooperating witness in 1991 and detailed for the FBI "the historic manipulation of Local 282 On-site Stewards by the Gambino La Cosa Nostra family," id. n. 3). Boggia had been appointed to his On-site Steward position by former Local 282 officer Robert Sasso, who later permanently resigned from IBT membership in order to settle charges that he knowingly associated with members of organized crime, including Gravano. The IRB Report recommended that the Trustee bring disciplinary charges against Boggia.
 
 
 6
 The Trustee lodged the recommended charges and requested that Boggia be permanently expelled from the Union. A panel was promptly appointed by IBT General President Ron Carey to hear the evidence, make findings, and recommend a resolution. That panel ("First Panel") conducted hearings in November 1996, found Boggia to have accepted a bribe, and recommended his expulsion. The First Panel's decision, however, was overturned by the IRB, which ruled that Boggia had not been provided with certain documents sufficiently in advance of his hearing. Carey thereafter appointed a new panel, composed entirely of new members, to hear the charges ("Second Panel" or "Panel").
 
 
 7
 The Second Panel conducted hearings in June 1997. The case against Boggia was presented by the Local 282 Trustee, who introduced the IRB Report and its accompanying exhibits, which included the tape transcript and the tape. Boggia appeared on his own behalf and was assisted in his defense by another IBT member. Boggia argued principally that, though he had met with Falco and made the statements captured on tape, he had in fact refused to accept the proffered bribe. He asserted that someone had alerted him that he was to be "set up" and that he had played along with the conversation merely to conduct his own investigation of the set-up. He also called several witnesses to testify to his good character. Boggia further argued that even if the evidence showed that he had accepted a bribe, the proposed penalty of permanent expulsion was too severe. He presented evidence of other malfeasances that had led to lesser penalties.
 
 
 8
 B. The Second Panel's Findings and Recommendation for Expulsion
 
 
 9
 In a decision entitled Findings and Recommendations of Hearing Panel, issued in September 1997 ("Second Panel Findings"), the Second Panel found that the reliable evidence, including the FBI tape of the conversation between Boggia and Falco, "clearly establishes that Boggia did in fact accept the bribe from Falco." (Second Panel Findings at 4.) The Second Panel noted that[t]he entire conversation between Boggia and Falco was recorded on the miniature tape recorder that Falco had on his person. Trustee Exhibit A-14. The tape recording establishes that upon meeting Boggia on the morning of April 7, Falco handed, and Boggia accepted, an envelope containing $1,250. Id. Upon handing the money to Boggia, Falco stated "Twelve hundred fifty dollars, now you don't give me no more trouble on the job." Id. Boggia responded "No." Id. Thereafter, Falco stated "Before the job finish I give you another twelve fifty, that's it, that's the best I can do. So you happy?" Boggia responded "Sure." Id.
 
 
 10
 (Id. at 3-4.) Falco then proceeded to seek "assurances from Boggia that the 'company' w[ould] not have problems with" a minority hiring "coalition," and "Boggia assured Falco that any such problems would be 'take[n] care of'." (Id. at 4.) The Second Panel rejected as not credible Boggia's assertion that he had not in fact accepted the proffered bribe:
 
 
 11
 First, Boggia acknowledged in the hearing that he met with an individual who he understood to be Frank Falco at the Hilltop Diner in Queens, New York on April 7, 1992. Transcript, pp. 51-52. Boggia also acknowledged at the hearing that it was in fact his voice on the tape recording. Id.
 
 
 12
 Second, the tape recording clearly demonstrates that Boggia accepted an envelope containing $1,250 from Falco in the parking lot of the Hilltop Diner. Indeed, the following colloquy supports this conclusion:
 
 
 13
 Falco: (UI) twelve hundred fifty dollars. Now, you don't give me no more trouble on the job.
 
 
 14
 Boggia: No.
 
 
 15
 Falco: All right, let me (UI), before the job finish I give to you another twelve fifty, that's it, that's the best I can do. So you happy?
 
 Boggia: Sure
 
 16
 . . . . .
 
 
 17
 Falco: Comfortable. Count the money (UI).
 
 
 18
 Boggia: I take your word for it.
 
 
 19
 (Id. at 5.) The Panel also rejected Boggia's claim that he had merely been conducting his own investigation of Falco. It pointed out, inter alia, that Boggia had given no credible explanation for his purported "sting" operation and had never reported Falco's actions to any governmental authorities.
 
 
 20
 The Panel recommended that Boggia be permanently expelled from membership in the IBT and barred for life from employment with the IBT or any of its affiliates. The Panel rejected Boggia's contention that permanent expulsion was a disproportionately severe penalty. It found that the prior cases relied on by Boggia, in which lesser sanctions had been imposed, were distinguishable. Only one of the cases, to wit, In re Mario Perrucci, concerned bribery by a union representative. In that case the union official had purchased a boat from an employer of his members for substantially less than its fair market value, thereby essentially accepting a thing of value from an employer; the penalty imposed was a permanent ban on holding Union office and a 10-year expulsion from membership. The Panel noted, however, that there was no evidence in that case that the union official had demanded the bargain price in exchange for "labor peace":
 
 
 21
 The Panel finds that the charge against Boggia in this matter is even more egregious than the charge against Perrucci because in this case there was a quid pro quo, i.e. the payment of money in exchange for securing labor peace. We are not aware of any evidence in the Perrucci case which linked the purchase of the boat to any concessions by the union. As a result, the Perrucci case is readily distinguishable from the facts in this case, and the penalty imposed against Perrucci would not be sufficient in this case.
 
 
 22
 (Second Panel Findings at 9.) The Panel concluded that Boggia's offense warranted lifetime expulsion from membership.
 
 
 23
 IBT General President Carey accepted the Second Panel's findings and recommendation. After summarizing the evidence and the findings, and noting his agreement, the General President ordered as follows:Glenn Boggia is permanently expelled from membership in any IBT affiliate, barred from employment by any IBT affiliate, including consulting work, and barred from receiving any compensation or benefits from any IBT affiliate, except for fully vested pension benefits.
 
 
 24
 (Decision of the General President dated September 23, 1997, at 2.) This decision was upheld on review by the IRB, which subsequently sought and obtained in the district court an order affirming the decision. This appeal followed.
 
 II. DISCUSSION
 
 25
 On appeal, Boggia makes challenges to the hearing procedures, the sufficiency of the evidence, and the severity of the penalty. Finding no merit in his contentions, we affirm.
 
 A. The Procedural Contentions
 
 26
 Boggia's principal procedural claims are that he was subjected to a "discriminatory" denial of the right to counsel, that he was prevented from cross-examining Falco, and that the Second Panel's ruling should have been reviewed by a Union official other than Carey. These contentions lack merit.
 
 
 27
 Neither the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq. (1994) ("LMRDA"), nor the IBT Constitution, nor the Consent Decree provides that a member is entitled to the assistance of counsel at a disciplinary hearing. Indeed, although Boggia complained to the Panel that barring his counsel from the hearing was unfair, he does not contend on this appeal that he had a right to have counsel present. Rather, he cites to a provision of the IBT Constitution that bars the "charging party" from receiving assistance of counsel in the presentation of evidence in support of the charges, see IBT Constitution art. XIX, § 1(c); and he argues that he was the victim of a "discriminatory" deprivation of counsel because at his hearing the charging party was so assisted. This contention is meritless.
 
 
 28
 The charging party here was the Local 282 Trustee. The record does not indicate that the Trustee was assisted by counsel at the hearing. The only person present in the capacity of counsel was counsel to the Panel, who advised the Panel as to appropriate evidentiary rulings. Other than the Trustee, Boggia, the Panel members, counsel to the Panel, and three witnesses, the only persons present were the Local 282 Corruption Officer, who had initiated the charges, and the Local 282 Corruption Counsel, Hon. Milton Mollen. At the outset of the hearing, the Panel's chairman stated that the Corruption Officer and Judge Mollen were present solely to observe and not to represent anyone. Boggia did not dispute that statement or otherwise suggest that any person in attendance was there in the capacity of counsel to assist the Local 282 Trustee. Boggia was permitted to consult counsel before the hearing; and, as required by the IBT Constitution, he was permitted to represent himself and to be accompanied and assisted at the hearing by an IBT member. We see nothing improper in this procedure.
 
 
 29
 Boggia's contention that he was improperly denied the opportunity to cross-examine Falco, whose tape-recorded statements were hearsay, is meritless for several reasons. First, Boggia did not dispute that the recorded conversation with Falco took place and that the voice attributed to him was in fact his. Further, Boggia's defense was that he was engaged in a "sting" of his own to explore the FBI's "sting." That defense did not depend on any testimony from Falco.
 
 
 30
 Moreover, in IBT disciplinary hearings, evidentiary rules are relaxed, and hearsay--so long as it is accompanied by sufficient indicia of reliability--is admissible. See, e.g., United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("DiGirlamo"), 19 F.3d 816, 823 (2d Cir.), cert. denied, 513 U.S. 873, 115 S.Ct. 199, 130 L.Ed.2d 130 (1994); United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("Cimino"), 964 F.2d 1308, 1312 (2d Cir.1992). Hearsay evidence may be considered particularly reliable when corroborated by non-hearsay statements or by reliable independent sources, see DiGirlamo, 19 F.3d at 823-24, or when the hearsay declarant could face criminal sanctions for making false statements to the FBI, see United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("Adelstein"), 998 F.2d 120, 125 (2d Cir.1993); Cimino, 964 F.2d at 1313. The fact that the declarant participated in the events pursuant to a cooperation agreement with the government does not give rise to any presumption that his statements are unreliable. See Cimino, 964 F.2d at 1312. Within this framework, Falco's recorded statements were corroborated by, inter alia, Boggia's responses and were plainly admissible.
 
 
 31
 Finally, Boggia's own statements were not hearsay, and his own words were the most damning evidence against him. His contention that he rejected the bribe and that no money ever changed hands was belied by, for example, his response to Falco's question as to whether he was happy with the $1,250 as the first of two such payments ("Sure."), and his response to Falco's suggestion that Boggia count the money ("I take your word for it.").
 
 
 32
 Boggia's complaint that Carey should have been disqualified from reviewing the Second Panel's recommendation is similarly unfounded. Although a union member may not, consistent with the LMRDA's "full and fair hearing" provision, see 29 U.S.C. § 411(a)(5), be retried before a panel that includes one or more persons who previously heard the identical charges and found him guilty, see, e.g., Feltington v. Moving Picture Machine Operators Union Local 306 of I.A.T.S.E., 605 F.2d 1251, 1256-57 (2d Cir.1979), cert. denied, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980); Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U., 605 F.2d 1228, 1242-43 (2d Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), we have never extended this right to include the right to a different reviewing entity, see generally Feltington v. Moving Picture Machine Operators Union Local 306 of I.A.T.S.E., 605 F.2d at 1254-55, and we decline to do so here.
 
 
 33
 Here, Boggia was afforded a new hearing before the Second Panel, whose members did not include any members of the First Panel. There was no requirement that Carey, who had reviewed the decision of the First Panel, be replaced by a new reviewer following the decision of the Second Panel. Nor has Boggia provided anything more than conclusory assertions as to his view that Carey was biased against him or was otherwise unfit to be a reviewing officer. Carey's role provides Boggia no basis for relief.
 
 
 34
 Finally, although Boggia also complains that various of his prehearing discovery demands were not met, the IBT responded to those demands by stating that it possessed no materials other than those already given him. Boggia conceded at the hearing that he had no knowledge of the existence of other materials. The record does not reveal any violation of any discovery obligation that may have been imposed by the IBT Constitution, the Rules and Procedures of the IRB, or other internal Union rule.
 
 
 35
 In sum, we see no violation of any of Boggia's procedural rights.
 
 B. The Sufficiency Challenge
 
 36
 Nor is there merit in Boggia's challenge to the sufficiency of the evidence. We have previously noted that "the Consent Decree contains an extremely deferential standard of review of decisions of the IRB by the district court," but in each of the matters to come before us we have found it unnecessary to define the precise standard of review to be applied on appeal because in each case we have concluded "that the district court's order should be affirmed under any arguably applicable standard of review." United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("Simpson"), 120 F.3d 341, 346 (2d Cir.1997) (internal quotation marks omitted) (citing cases); see, e.g., United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("Sansone"), 981 F.2d 1362, 1368 (2d Cir.1992) (citing cases).
 
 
 37
 We see no greater need to define a precise standard of appellate review in this case. The evidence described in Part I above was ample to support a finding of Boggia's guilt under any arguably applicable standard.
 
 C. The Challenge to the Sanctions
 
 38
 Nor are we persuaded by Boggia's contention that the sanctions imposed are unduly harsh. Expulsion from union membership, though a drastic sanction, is permissible under the LMRDA if the union's constitution so provides. See 29 U.S.C. § 411(a)(5). There is no dispute that the IBT Constitution provides that a member may be stripped of membership rights if found guilty of misconduct. The district court reviews penalties imposed by the IBT in accordance with the Consent Decree under an "arbitrary and capricious" standard, see, e.g., Simpson, 120 F.3d at 348; United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO ("Wilson"), 978 F.2d 68, 73 (2d Cir.1992), and on appeal this Court will not overturn such a penalty unless we find it unwarranted in law or in fact, see, e.g., Simpson, 120 F.3d at 348; Wilson, 978 F.2d at 73.
 
 
 39
 The record in the present case plainly justified the findings that Boggia had demanded and accepted a bribe, and that he had done so in exchange for promising labor peace. The Second Panel considered the arguments and evidence presented by Boggia in support of the imposition of a less severe penalty. As described in Part I.B. above, the Panel gave a reasoned explanation for distinguishing each of the cases called to its attention and advanced a sound basis for imposing the most severe sanction on Boggia. We see no arbitrariness or caprice in the decision at issue here.
 
 CONCLUSION
 
 40
 We have considered all of Boggia's contentions in this appeal and have found them to be without merit. The order of the district court is affirmed.
 
 
 
 *
 Honorable J. Garvan Murtha, of the United States District Court for the District of Vermont, sitting by designation